Marie **FRICKE**, Plaintiff,

v.

**ISBRANDTSEN COMPANY, Inc.,** Defendant.

United States District Court
S. D. New York.
May 20, 1957.

Baker, Garber & Chazen, Hoboken, N. J., for plaintiff, Milton Garber, Hoboken, N. J., and Jack Steinman, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant, William J. Brennan, New York City, of counsel.

PALMIERI, District Judge.

Defendant steamship line has brought this motion for summary judgment to dismiss plaintiff's claim for injuries caused her, she has alleged, by defendant's negligence and the unseaworthiness of its vessel. The defense which defendant urges is the expiration of the contractual one year limitation clause for bringing suit. Plaintiff contends that, notwithstanding a contractual provision pointing to United States law as governing the contract, German law controls, and that it may not give effect to the one year bar.

Plaintiff is a German national, entirely unconversant with English. She purchased steamship tickets in Germany for a round trip to and from the United States. These long-form tickets, written wholly in English and designed as a contract running from the front to the back, had a limitation provision of six months for notifying the steamship company and one year for suing it in the event of injury to the passenger. Another provision stated that all questions arising under the contract were to be decided according to the laws of the United States. While plaintiff clearly had opportunity to read the provisions (or to get them translated) before she surrendered the tickets on each of the two voyages making up the round trip, she claims that defendant never apprised her of the terms on the tickets nor did she get them translated. During the return trip to Germany, she was injured. Within six months, she notified the steamship company and plaintiff and defendant corresponded. The latter never notified the former of the one year limit for bringing suit. Approximately two years after her injury, plaintiff filed this claim.

If the law applicable to this contract were that of the United States,[1] plaintiff would clearly be barred.[2] A steamship ticket which is in the form of a contract, it is held, is binding upon the

---

1. Although the remedy pursued is at law, federal maritime and not state law controls. Siegelman v. Cunard White Star, Ltd., 2 Cir., 1955, 221 F.2d 189; Jansson v. Swedish Amer. Line, 1 Cir., 1950, 185 F.2d 212, 30 A.L.R.2d 1385; cf. Paduano v. Yamashita Kisen Kabushiki Kaisha, 2 Cir., 1955, 221 F.2d 615 casenote, 55 Col.L.Rev. 1225 (1955).

2. E. g., Baron v. Compagnie Generale Transatlantique, 2 Cir., 1939, 108 F.2d 21; Mulvihill v. Furness, Withy & Co., D.C.S.D.N.Y.1955, 136 F.Supp. 201; see 49 Stat. 960 (1935), 46 U.S.C.A. § 183b.

contractor, whether or not he is able to or has read it.[3] Thus, the question before me is narrowed to whether or not the law of the United States governs this contract, and more specifically, whether or not the contractual provision pointing to United States law is to be given effect.

■■ Ordinarily, the federal courts determine which law governs a contract by "grouping the contacts" or "finding the center of gravity" of the contract.[4] The law of the jurisdiction having the closest relation with the contract is selected because, it is felt, the parties contracted probably with that law (if any law) in mind, and that jurisdiction would probably have the greatest interest in defining the rights of the contracting parties.[5] This doctrine, however nebulous in its statement, seems to fulfill more adequately the expectations of the parties than the definitively worded, but often artificially applied, doctrine of *lex loci contractus*.[6] Where the parties themselves have stipulated the governing law, it would seem that their expectations would best be given effect by applying their choice. However, judicial inquiry is not confined to the contractual clause; the private selection is but one element, although a weighty one, determining the judicial finding of the appropriate law.[7] This consideration of many factors seems to be especially cogent to the situation now before me.

A contract of the type in this case is not formulated as a result of the give-and-take of bargaining where the desires of one party are balanced by those of the other. Instead, standard provisions generally common to the trade are submitted to the passenger-contractor on a take-it-or-leave-it basis.[8] In order to insure uniformity of interpretation and perhaps to avert findings of invalidity, these contracts often contain choice of law clauses. Such a clause was recently given effect by the Second Circuit when it applied English law to a suit brought by an American on a contract of passage, issued by a British steamship company and sold in New York, for injuries incurred on the voyage from New York to

3. Ibid.

4. E. g., Jansson v. Swedish Amer. Line, note 1 supra; Mulvihill v. Furness, Withy & Co., note 2 supra (alternative holding). But see Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 1888, 129 U.S. 397, 9 S.Ct. 469, 32 L. Ed. 788; McCaffrey v. Cunard S. S. Co., D.C.S.D.N.Y.1955, 139 F.Supp. 472 (Both applying rule of *lex loci contractus*).

5. See Auten v. Auten, 1954, 308 N.Y. 155, 161–163, 124 N.E.2d 99, 102–103; Cheatham and Reese, Choice of the Applicable Law, 52 Col.L.Rev. 959, 970–976 (1952); Harper, Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen's Essays, 56 Yale L.J. 1155, 1163–1167, 1170–1171 (1947).

6. See Cook, Contracts and the Conflict of Laws, 31 Ill.L.Rev. 143 (1936) and 32 Ill.L.Rev. 899, 918–19 (1938).

7. See Siegelman v. Cunard White Star, Ltd., note 1 supra; E. Gerli & Co. v. Cunard S. S. Co., 2 Cir., 1931, 48 F.2d 115; Cheatham and Reese, op. cit. supra note 5 at 972; Boissevain v. Weil [1949] 1 K.B. 482, 490–91, aff'd on other grounds, [1950] A.C. 327 ("* * * the proper law of the contract * * * depends not so much on the place where it is made, nor even on the intention of the parties, * * * but on the place with which it has the most substantial connexion. * * * Notwithstanding what was said in Vita Food Products v. Unus Shipping Co., [1939] App.Cas. 277 (P.C.1939), I do not believe that parties are free to stipulate by what law the validity of their contract is to be determined. Their intention is only one of the factors to be taken into account."

8. See Siegelman v. Cunard White Star, Ltd., note 1 supra 221 F.2d at page 204 (dissenting opinion). The time limitation clause appears in every case I have read in which a passenger has brought suit against the steamship company. It is quite old, see e.g., Oceanic Steam Nav. Co. v. Corcoran, 2 Cir., 1925, 9 F.2d 724, 57 A.L.R. 163 and appears to be motivated by a difficulty on the part of the steamship companies to limit their liability against claims brought for personal injuries. See 49 Stat. 1480 (1936), 46 U.S.C.A. § 183c, which denies them this right.

France. Siegelman v. Cunard White Star, Ltd., 2 Cir., 1955, 221 F.2d 189. The Court, applying federal conflicts law, considered the ticket to be a contract and followed the choice of law clause as embodying the intention of the parties.[9]

In the Siegelman case, all of the incidents with respect to the making of the contract took place in the United States. Accordingly, the court could feel itself free to apply American contract notions in a choice of law context. This it did, supporting its finding of a contract and therefore a binding choice of law provision by an earlier case which held a steamship ticket to be a contract as a matter of federal substantive law.[10] Although federal substantive and conflicts principles are mutually distinct, as the analysis of the Siegelman Court itself indicated,[11] it does not seem to have been unjust to apply the objective expectations theory of substantive contracts law to a conflict of laws question when the parties could be charged with familiarity with those principles.

■■ In the instant case, however, all of the incidents surrounding the sale of the ticket took place in Germany. Plaintiff, if she considered any law, probably felt that German law controlled. It may be that German law affords protection to parties in this plaintiff's position by not attaching great significance to "objective expectations" as expressed in steamship tickets, and perhaps such protection might even amount to a strong national policy. It would seem that federal conflicts law should take cognizance of such an attitude by the foreign sovereign where it is coincident with so many of the significant contacts. While parties should not be precluded from seeking predictability and uniformity by stipulating their choice of law, unilaterally imposed provisions of this nature should not be enforced unless the party urging enforcement provided the other, illiterate in the language of the contract, with knowledge of what was intended. If, for example, plaintiff had been given a German counterpart of the contract and had understood its terms, the stipulation of United States law would probably be binding upon her. As in the Siegelman case, she could be charged, as a matter of federal conflicts law, with autonomy to choose to be bound by a particular legal system. But unless a party, in circumstances such as those found in the instant case, can be said to have understood that another law from the one normally governing the contract is to control, it would be improper to decide a question which poses a choice between legal systems having quite different jurisprudential philosophies on American contract law principles.

I therefore deny defendant's motion for summary judgment dismissing plaintiff's claim. This denial, however, is without prejudice to its being renewed upon a proper showing of German law.

9. See criticism of Ehrenzweig, Adhesion Contracts in the Conflict of Laws, 53 Col. L.Rev. 1072 (1953).

10. Foster v. Cunard White Star, Ltd., 2 Cir., 1941, 121 F.2d 12.

11. See also Mulvihill v. Furness, Withy & Co., note 2 supra.