**SOUTHERN INTERNATIONAL SALES CO., INC., Plaintiff,**

v.

**POTTER & BRUMFIELD DIVISION OF AMF INCORPORATED and AMF Incorporated, Defendants.**

No. 72 Civ. 3989.

United States District Court,
S. D. New York.

March 18, 1976.

---

Tabak, Ezratty & Mellusi, New York City, for plaintiff; Ralph J. Mellusi, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendants; W. Hubert Plummer, Frederick A. Nicoll, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This motion for summary judgment requires the court to pass upon the binding effect of a stipulation of the parties as to the law governing the interpretation of their contract.

Defendant Potter & Brumfield is an Indiana-based manufacturer of electrical products. Plaintiff Southern International is a Puerto Rican corporation. By agreement dated April 2, 1969, plaintiff became defendant's exclusive sales representative for Puerto Rico and adjacent United States islands. The agreement provided, among other things, that either party could terminate it "for any reason whatsoever" upon thirty days' notice, and that it "shall be interpreted in accordance with the laws of the State of Indiana." On December 21, 1971, Potter & Brumfield notified Southern International that the contract would be terminated as of February 20, 1972. Southern claims that it had performed "outstandingly" and that the termination was motivated by defendant's purpose to capitalize on the contacts Southern had developed by dealing directly with them.

In September 1972, Southern brought this diversity action, claiming that the termination violated the Puerto Rican Dealers' Contracts Act,[1] which provides in pertinent part:

1. Puerto Rican Law No. 75, 10 L.P.R.A. § 278 et seq.

"Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause."

Defendant does not dispute that its agreement with plaintiff was a "dealer's contract" as defined in the Act. Although it contends it did have "just cause" for the cancellation, its position on this motion for summary judgment is that the Dealers' Contracts Act does not apply because the parties agreed that Indiana law would govern their contract's interpretation, and Indiana would give effect to the clause allowing unilateral termination. Plaintiff argues that, upon all the circumstances surrounding the execution and performance of the contract, Puerto Rican law applies despite the provision that Indiana law governs its interpretation. The court agrees with plaintiff and denies the motion for summary judgment.

Since this is a diversity case, New York state choice of law principles apply on the issue of whether the law of Indiana or Puerto Rico governs.[2] There are, as defendant notes, a number of New York cases that hold the parties' choice of law to control where their contract has a reasonable relation to the jurisdiction whose law they choose.[3] It cannot seriously be challenged that the contract at issue bore a reasonable relation to Indiana. Defendant has its headquarters and facilities there, and it shipped, processed, and did the paperwork in Indiana on Southern's orders for merchandise. But this begins rather than ends inquiry. There is also authori-

ty from the New York Court of Appeals suggesting that the parties' intention and stipulation as to the law governing their contract is but one factor, albeit a weighty one, in deciding the ultimate question—namely, which jurisdiction has the most significant contacts with the matter at issue.[4] Under this analysis the significance of the parties' choice of Indiana law would pale when viewed against the facts that almost all of the equipment sold by Southern on defendant's behalf was sold in Puerto Rico, for Puerto Rican accounts and for use in Puerto Rico; the solicitation of customers occurred in Puerto Rico; and plaintiff signed the contract there. More to the point, the application of Indiana law would frustrate the fundamental policy expressed in the Puerto Rican Dealers' Contracts Act. According to the Statement of Motives that accompanied the Act:

"The Commonwealth of Puerto Rico can not remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationships, as soon as these dealers, concessionaires or agents have created a favorable market and without taking into account their legitimate interests.

"The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power, it deems it necessary to regulate, insofar as pertinent, the field of said rela-

**2.** *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**3.** *See, e. g., Wyatt v. Fulrath,* 16 N.Y.2d 169, 173, 264 N.Y.S.2d 233, 211 N.E.2d 637 (1965); *A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 381, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957); *Reger v. National Ass'n of Bedding Mfrs., Inc.,*

83 Misc.2d 527, 372 N.Y.S.2d 97, 114 (Sup.Ct. Westchester Co. 1975). *See also B.M. Heede, Inc. v. West India Mach. & Supply Co.,* 272 F.Supp. 236, 240 (S.D.N.Y.1967).

**4.** *Haag v. Barnes,* 9 N.Y.2d 554, 559–60, 216 N.Y.S.2d 65, 175 N.E.2d 441 (1961).

tionship, so as to avoid the abuse caused by certain practices."

This strong legislative policy could easily be circumvented were the court to announce a rule that would allow a manufacturer, by wielding its economic might against a distributor, to exact a stipulation as to governing law compelling the distributor to forsake the protection afforded him by the Puerto Rican legislature.[5] The facts presented here fit squarely within the rule of section 187 of the *Second Restatement of Conflict of Laws*, which provides in part:

> "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless  .  .  .
>
> .    .    .    .    .
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Section 188 of the *Second Restatement* applies in the absence of an effective choice of law by the parties, and calls for the application of the law of the state that "has the most significant relation-ship to the transaction and the parties" in light of the policy factors that shape choice of law.

Whether one applies the "most significant relation" test expressed in section 188 and in *Auten v. Auten*[6] or the more recent "governmental interest" analysis of *Intercontinental Planning, Ltd. v. Daystrom, Inc.,*[7] Puerto Rican law would plainly govern the validity of the contract in the absence of the parties' stipulation.  As noted above, plaintiff is a Puerto Rican company and the contract's essential purpose was to create a means by which defendant could distribute its products to the Puerto Rican market. Puerto Rico's contacts with the parties and the transaction, and its substantial interest in seeing that its local distributors are not exploited by foreign manufacturers, far outweigh the contacts with Indiana or Indiana's interest, if any, in the validity of the unilateral termination clause of the contract at issue.

Under the circumstances, the general rule giving effect to the parties' choice of law must bow to the exception stated in section 187 of the *Second Restatement*.  While the New York courts have yet to rule on the exact issue here presented, there is every reason to believe that they would follow the *Restatement* approach.  It has found support in other courts,[8] and in a case decided in this district and applying New York law.[9]  Moreover, the New York courts have cited section 187 of the *Second Restatement* with approval.[10]

---

**5.** Courts have observed that the "relationship between the manufacturer and the distributor  .  .  .  is recognized to be that of dependency of the latter upon the former  .  .  ." *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 376, 165 N.Y.S.2d 475, 481, 144 N.E.2d 371, 376 (1957).

**6.** 308 N.Y. 155, 124 N.E.2d 99 (1954).

**7.** 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969).

**8.** *See, e. g., Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304, 1307 n.3 (1st Cir. 1973); *Nelson v. Aetna Life Ins. Co.*, 359 F.Supp. 271, 292–93 (W.D.Mo.1973); *American Eutectic Welding Alloys Sales Co. v. Garcia-Rodriguez*, 353 F.Supp. 850, 855 (D.P.R.), rev'd on other grounds, 480 F.2d 223 (1st Cir. 1973); *Goff v. Aamco Automatic Transmissions, Inc.*, 313 F.Supp. 667, 669 (D.Md.1970).  *See also Massengale v. Transitron Electronic Corp.*, 385 F.2d 83, 86–87 (1st Cir. 1967); *Forney Indus., Inc. v. Andre*, 246 F.Supp. 333 (D.N.D.1965); *Fricke v. Isbrandtsen Co.*, 151 F.Supp. 465 (S.D.N.Y.1957).

**9.** *Nakleh v. Chemical Constr. Corp.*, 359 F.Supp. 357 (S.D.N.Y.1973).

**10.** *See, e. g., Reger v. National Ass'n of Bedding Mfrs. Group Ins. Trust Fund*, 83 Misc.2d 527, 372 N.Y.S.2d 97, 114, 117–18 (Sup.Ct., Westchester Co. 1975); *Sears, Roebuck & Co. v. Enco Assoc.*, 83 Misc.2d 552, 370 N.Y.S.2d 338, 349 (Sup.Ct., Westchester Co. 1975).

*B.M. Heede, Inc. v. West India Mach. & Supply Co.,*[11] a case upon which defendant relies heavily, does not compel a different result. The court there gave effect to the parties' stipulation that New York law would govern their contract and accordingly dismissed plaintiff's claim under the Puerto Rican Dealers' Contracts Act. However, it does not appear that Judge Tenney was presented with the argument concerning the infringement of Puerto Rico's strong public policy as expressed in the Dealers' Contracts Act, and he decided the *Heede* case prior to the adoption of section 187 of the *Second Restatement of Conflict of Laws.* While the failure to enforce the parties' choice of law does invalidate their contract to some extent, "[f]ulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties."[12]

Since Puerto Rican law governs this controversy, the factual question whether Potter & Brumfield had "just cause" as defined in the Dealers' Contracts Act for the termination of its contract with Southern presents an issue of fact which is in dispute. Thus, defendant's motion for summary judgment is denied.

---

**11.** 272 F.Supp. 236 (S.D.N.Y.1967).

**12.** Second Restatement of Conflict of Laws § 187, Comment g.