OPINION OF THE COURT
Peter P. Rosato, J.
By way of a loan agreement executed in New York on November 27, 1981, defendant Susie Schulman borrowed $8,500 from plaintiff. Plaintiff is an Israeli bank with a branch in New York State. Defendants are residents of Westchester County. Pursuant to paragraph 5 (a) of said agreement, the interest rate on the loan was to be 6Vi% in excess of the Eurodollar rate, which was, as of the date in question, 12%. Therefore, under this formula, the rate of interest charged was 18[1]/4% per annum.
Defendant has now moved for summary judgment, solely on the narrow ground that since this loan agreement provided for a maximum rate of interest in excess of that allowed by law as of November 27, 1981, i.e., 16% per annum (see General Obligations Law, § 5-501; Banking Law, § 14-a), the instant agreement should be declared null and void as usurious and that any and all proceeds taken by the lender thereunder should be surrendered. So *517 the record be clear, the defendants advance no contention that the loan agreement in question was obtained as a result of fraud, duress, or overt arm twisting. Conversely, the plaintiff makes no claim that the applicable usury ceiling controlling the type of transaction in question here, that is, the typical bank loan, is other than 16% per annum rate provided in the statutes relied on by the defendant, i.e., section 5-501 of the General Obligations Law and section 14-a of the Banking Law.[1]
Plaintiff, on the other hand, has cross-moved for summary judgment against both named defendants for the unpaid balance of the loan, i.e., $2,488.65 with interest from December 31, 1982, together with attorney’s fees in the sum of $500. Plaintiff points out that the loan agreement, by its express terms, provides at paragraph 17 that “this Agreement shall be governed by the Laws of the State of Israel.” Further, at paragraph 18, the agreement provides that: “The Borrower hereby elects the town of Tel Aviv as the place of jurisdiction for all purposes of these presents, and the Borrower hereby irrevocably submits to the jurisdiction of the appropriate courts in Tel Aviv, but nothing herein contained shall derogate from the rights of the Bank to institute proceedings against the Borrower in any other appropriate jurisdiction.”
Similarly, an accompanying guarantee agreement executed by defendant Daniel Schulman on November 27, 1981, provides in paragraph 13 that: “This agreement shall be governed by the Laws of the State of Israel, and we hereby irrevocably submit to the jurisdiction of the appropriate courts in Tel Aviv, or any other jurisdiction determined at the option of the Bank, with regard to any matters conducted with or arising out of this deed, or the aforesaid amounts, and agree that any summons, notice or judgment or other legal process or document in connection with proceeding instituted by the Bank in any appropriate court may be served upon us by delivering same to our undermentioned agents in Israel at the offices of * * * or to the address heretofore noted on the first page of this *518 agreement. We shall at any time and from time to time be entitled by notice in writing to the Bank to change the foregoing agents and/or address of offices for service of process upon us in Israel.”
Counsel for both parties argue that there exist no questions of fact in this action. Rather, they contend that the question presented is strictly one of law, i.e., whether or not the “choice-of-law” clauses contained in the loan agreement which provide that the laws of a foreign State, i.e., Israel, shall govern are valid and enforceable.
As a general rule, an express provision contained in an agreement to have that agreement governed by the law of a particular jurisdiction will be honored. (See Freedman v Chemical Constr. Corp., 43 NY2d 260, 265, n.) However, in that same footnote, the Court of Appeals went on to say that, “[b]ut where, as with the Statute of Frauds, the issue arguably cannot be controlled by voluntary agreement, there is some question whether, in the absence of a reasonable basis for choosing the law of the jurisdiction designated by the parties, their choice of law will be honored (see Restatement, Conflict of Laws 2d, § 187, subd [d], par [a])”. That is “[t]he jurisdiction whose law the parties intended to apply, however, must bear a reasonable relation to the agreement (A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369, 381); and the enforcement of the provision applying a foreign rule of law must not violate a fundamental public policy of New York (see 8 NY Jur, Conflict of Laws, § 24).” (See Gambar Enterprises v Kelly Servs., 69 AD2d 297, 303.)
Section 187 of the Restatement of Conflict of Laws, Second, cited by the Court of Appeals in Freedman (supra), provides:
“(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
“(2) The law of the state chosen by the parties to govern their contractual rights and. duties will be applied, even if the particular issue is one which the parties could not have *519 resolved by an explicit provision in their agreement directed to that issue, unless either
“(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties’ choice, or
“(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.” (Emphasis added.)
In their Comment on subdivision (1) of the above provision, the drafters of the Restatement use the following illustration:
“4. In State X, A establishes a trust and provides that B, the trustee, shall be paid commissions at the highest rate permissible under the local law of state Y. A and B are both domiciled in X, and the trust has no relation to any state but X. In X, the highest permissible rate of commissions for trustees is 5 per cent. In Y, the highest permissible rate is 4 per cent. The choice-of-law provision will be given effect, and B will be held entitled to commissions at the rate of 4 per cent.
“5. Same facts as in Illustration 4 except that the highest permissible rate of commissions in X is 4 per cent and in Y is 5 per cent. Effect will not be given to the choice-of-law provision since under X local law the parties lacked power to provide for a rate of commissions in excess of 4 per cent and Y, the state of the chosen law, has no relation to the parties or the trust.” (Emphasis added.)
It strikes this court that the hypothetical contained in illustration No. 5 is very similar to the facts of the instant case. That is, in New York State (State X), B (here the defendants) takes out a loan from bank A (plaintiff) at a rate of interest in excess of that permitted by law of State X. The only difference between the facts of the instant case and those contained in the hypothetical is that in the case at bar plaintiff bears some relation to the chosen jurisdiction, i.e., Israel, in that plaintiff’s home address is given as *520 Tel Aviv. Nonetheless, the court feels that this distinction is not controlling. Rather, assuming under the Restatement hypothetical that the issue in question (usury) is one which the parties cannot expressly provide for, the Restatement provides that the “choice-of-law” clause would still be valid and enforceable unless either (a) the chosen State, Israel, has no substantial relationship to the parties or transaction, or (b) application of the law of the chosen State (Israel) would be contrary to a fundamental policy of a State having a materially greater interest than the chosen State in the outcome (which State, this court submits, is New York State). The court would further point out that the standard enunciated at section 187 of the Restatement of Conflict of Laws, Second, has been adopted in several prior reported cases in New York. (See Freedman v Chemical Constr. Corp., supra; Reger v National Assn. of Bedding Mfrs. Group Ins. Trust Fund, 83 Misc 2d 527 [Gagliardi, J.]; Sears, Roebuck & Co. u Enco Assoc., 83 Misc 2d 552 [Slifkin, J.]; Joy v Heidrich & Struggles, 93 Misc 2d 818; Southern Int. Sales Co. v Potter & Brumfield Div., 410 F Supp 1339 [Weinfeld, J.].)
Taking these two exceptions in inverse order, there are reported cases in New York holding that the usury laws are a declaration of this State’s public policy. In fact, at least one court has characterized usury as a question of supervening public policy. (See Guerin v New York Life Ins. Co., 271 App Div 110; Matter of Gale v Hilts, 176 Misc 277 [Pecora, J.]; and see Restatement, Conflict of Laws 2d, § 187, Comment g, p 574.) As the Court of Appeals has stated in Schneider v Phelps (41 NY2d 238, 243), “[t]he purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation.” This court would find from these cases that the policy underlying our State’s usury laws is in fact of a fundamental nature.
Given that finding, then, the fact that the rate of interest agreed upon here (18(4%), in the context of today’s economy, does not perhaps shock the conscience is not determinative. Rather, to permit a contract executed in New York State to be governed by the laws of a jurisdiction which has apparently chosen not to outlaw usury at all (as opposed to *521 the situation where the laws of another jurisdiction do prohibit usury but in so doing allow a somewhat higher ceiling than that permitted in New York) would, in this court’s view, fly in the face of time-honored public policy.
Moreover, even were this court, arguendo, to find no violation of fundamental public policy, it would still be constrained to strike down the provision in question under the first prong of the Restatement test, i.e., the “substantial relationship” test. As plaintiff concedes, the instant loan agreement and accompanying guarantee were executed in New York State at plaintiff’s branch bank in New York and supposedly thereafter sent back to the main branch in Israel for processing. The defendants are residents of Westchester County in New York State. In addition, the instant lawsuit is pending in the courts of Westchester County. Thus, all objective criteria point to the conclusion that New York, and not the Country of Israel, bears the greatest “governmental interest,” or most “substantial relationship” to this loan agreement. (Contrast Southern Int. Sales Co. v Potter & Brumfield Div., supra; also contrast City Nat. Bank v Lake Constr. Co., 227 App Div 85, relied on by plaintiff, where the note in question was executed in Florida.) The court would similarly contrast the case of Katz v Fischel (174 Misc 589), where the transaction, not usurious under the law of Germany, actually took place in Germany.
For all these reasons, then, this court would find those provisions of the instant loan agreement and accompanying guarantee providing that Israeli law shall control to be invalid and unenforceable.[2] Accordingly, the court will deny plaintiff’s cross motion for summary judgment. However, the court will also deny defendant’s motion for summary judgment since, in this court’s vmw, significant questions of law and fact remain with respect to the exact legal status of plaintiff’s branch bank, which in turn may determine exactly how much monetary relief the defendants are *522 entitled to. On the one hand, the defendants would ask that plaintiff surrender all principal and interest heretofore paid hereunder, which the defendants could well be entitled to under section 5-511 of the General Obligations Law if the instant agreement is deemed void under section 5-501 of the General Obligations Law, unless plaintiff were able to demonstrate that it qualifies as a savings bank, in which case, under section 5-511 of the General Obligations Law the defendants would be entitled only to a forfeiture of the entire amount of interest agreed on and a recovery of twice the amount of interest already paid in excess of the legal limit. On the other hand, if plaintiff qualifies as a “foreign banking corporation” licensed to maintain a branch in New York, plaintiff would then be regulated by section 202 of the Banking Law, which at subdivision 7 would limit the amount of defendants’ relief to the same extent provided under section 5-511 of the General Obligations Law with respect to savings banks. In such an event, plaintiff arguably could still seek the remaining unpaid principal. The motion papers submitted simply do not provide the court with sufficient information to answer these questions. To the contrary, the bald statements contained in Mr. Ginach’s affidavit at paragraph four, which statements plaintiff fails to support with any documentation, i.e., that plaintiff is licensed to operate a “representative office” in New York State but that plaintiff is not chartered as a full service bank in New York, nor is it chartered by the Federal Government, raise as many questions as they answer. Therefore, questions of fact having been presented with respect to the legal status of plaintiff’s branch bank in New York, summary judgment in favor of the defendants for the return of both principal and interest under section 5-511 of the General Obligations Law cannot lie; additionally, these issues would appear to require an evidentiary hearing. Plaintiff is to file a hearing note of issue.

. See Barone v Frie (99 AD2d 129), wherein the Second Department, in holding that the purchase-money mortgage there in question was not a loan within the meaning of the usury laws, reaffirmed that section 5-501 of the General Obligations Law and section 14-a of the Banking Law are in fact the controlling usury statutes.

. Given the fact that we here have a bank as plaintiff and individuals as defendants, it is highly unlikely, nor is there before the court any evidence from which plaintiff could argue that the defendants persuaded it to make the instant loan through the use of unscrupulous or high-pressure tactics, which tactics have been found by at least one court, in equity, to be a bar to the defense of usury. (See Schylander v Tsaruches, 96 Misc 2d 934 [Feldman, J.].)