Kalman **WEISS, as Assignee, et al., Plaintiffs,**

v.

**LA SUISSE, SOCIETE D'ASSURANCES SUR LA VIE, Defendant.**

**No. 97CIV1352CMMDF.**

United States District Court, S.D. New York.

July 25, 2001.

---

Richard M. Mahon, Drake, Sommers, Loev, Tarhis & Catania, P.C., Newburg, NY, Rachell Sirota, Sirota LLP, New York City, for Plaintiffs.

Richard Niles Chassin, Becker, Glynn, Melamed & Muffly LLP, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER DISPOSING OF CHOICE OF LAW ISSUES

MCMAHON, Judge.

Before this case can proceed further, the Court must resolve the issue of what law governs the interpretation of the policies sold by La Suisse to the plaintiffs. The policies contain a choice of law clause, which provides that they are governed by Swiss law—a not altogether surprising result, since they were issued by a Swiss insurance company. Plaintiff nonetheless contends that New York law should govern.

■ The burden of demonstrating that Swiss law does not govern rests with plaintiffs (who challenge the choice of law clause) and it is a heavy burden. *Finucane v. Interior Construction Corp.*, 264 A.D.2d 618, 620, 695 N.Y.S.2d 322, 325 (1st Dept.1999).

■ Both sides agree that a choice of law clause in a contract is presumed valid and enforceable in a case where, as here, the underlying transaction is international in character. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir.1993). Assuming the forum selected has sufficient contacts with the transaction, a court is to apply a choice of law clause absent fraud or a violation of public policy. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir.2001); *Hartford Fire Insurance Corp. v. Orient Overseas Containers Lines*, 230 F.3d 549 (2d Cir.2000). Since this Court sits in diversity, it looks to the law of New York to determine whether there is some public policy exception to the enforceability of the choice of law clause. *Hartford Fire Insurance*, 230 F.3d at 556.

New York's public policy exception to an express choice of law provision should be considered only after the Court has first determined, under choice of law principles, that the applicable substantive law is not the forum law, and that New York's nexus with the case is substantial enough to threaten this State's public policy. *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 78, 595 N.Y.S.2d 919, 926, 612 N.E.2d 277 (1993). The exception will apply only when the application of foreign law would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Id.*

Let me begin by summarizing the parties' respective positions.

Plaintiffs contends that following the choice of law clause would offend New York's public policy because (1) the clause was not included in the application that was signed by the policyholders; and (2) the application was printed in German, a language the policy holders did not read or understand; and (3) the clause was not otherwise communicated to the policy holders prior to the submission of their applications.

Defendants respond that (1) there was sufficient disclosure and negotiation of the choice of law provision in advance of contracting; (2) plaintiffs are estopped to deny that fact; and (3) New York public policy would not be offended by application of Swiss law to the interpretation of a Swiss insurance policy.

On the whole, I conclude that defendants are correct for reason number three—New York's public policy will not be offended by the application of Swiss law, given the facts of this case.

There is no dispute concerning how the contracts of insurance were negotiated. Applications were prepared in New York,

with Elias Horowitz, a member of the Chassidic community who was trusted by the residents of Monsey, Monroe and Brooklyn, acting as intermediary. The applicants selected German (from among German, French and Italian, the three Swiss national languages) as the policy language, not because they spoke German (they did not), but because Horowitz did. Although Horowitz' affidavit is silent on the point of communication about the choice of law clause (he addresses the corresponding forum selection clause), La Suisse does not dispute that such legal niceties were not the subject of discussion when the applicants signed the policy applications (printed in a language other than their own). In fact, the choice of law provision was not in the application, so even if the application had been printed in Yiddish, or if the applicant read German, one would not have notice of it. The choice of law clause was one of the General Conditions of the policy.

The application clearly states (if you read German, that is) that the applicant "has received before signing the application a copy of the General Conditions" to the policies. This was in fact not the case—not a single applicant received the General Conditions prior to signing the application, regardless of what the application said. And there is no indication in the record that LaSuisse had even provided copies of the General Conditions to Horowitz for use in the United States; the general conditions were sent to the policy holders' representative in Switzerland following receipt of the applications, and only in some cases were English translations of the policy sent to plaintiffs at a later date. But the plaintiffs signed a document (in a foreign language) attesting otherwise.

■ All of these facts are undisputed. Nonetheless, it would not offend New York's public policy to apply Swiss law in accordance with the choice of law clause specified in the General Conditions of the policy.

First of all, there is nothing offensive to New York public policy about a Swiss choice of law clause contained in an insurance policy issued in Switzerland, even if the policy was sold to a New Yorker. New Yorkers enter into contracts governed by law other than New York's all the time.

■ Second, there is nothing intrinsically offensive about applying Swiss law to these policies, even if the choice of law issue was not expressly disclosed or discussed prior to submission of the plaintiffs' applications. Under New York law, applicants can enter into contracts without being aware of all the insurer's terms, and policyholders are bound to the terms of insurance policies that are incorporated by reference "regardless of whether the insured received actual delivery thereof." *Ruiz v. State Wide Insulation and Construction Corp.*, 269 A.D.2d 518, 519, 703 N.Y.S.2d 257, 259 (2d Dept.2000). While the Court was originally troubled by the fact that the paperwork to obtain the policies was printed in a language the plaintiffs do not speak, defendants remind me of the ancient contract maxim that even a blind man must protect himself by procuring someone to read a contract for him. *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 365–67 (S.D.N.Y.1975) (where plaintiff pleaded ignorance of German to avoid choice-of-forum clause in signed contract written in German, the court held that the clause is binding). So here, plaintiffs were free to have Horowitz translate the application for them—indeed, that was part of what he was there to do (Horowitz. Decl. at ¶ 9, 13.). And they could have demanded information about the General Conditions when they learned (as they would have learned, had they bothered to have the application translated) that they

were attesting to receipt of the General Conditions as part of their application. If plaintiffs were unaware of the choice of law clause, they have only themselves to blame. Cases are legion holding that a party who signs a document without any valid excuse for having failed to read it is "conclusively bound" by its terms. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11, 537 N.Y.S.2d 787, 792, 534 N.E.2d 824 (1988).

■ It is also a maxim of New York law that a plaintiff cannot seek the benefit of insurance coverage without being subject to the limitations of that coverage. *Hirshfeld v. Maryland Casualty Co.*, 249 A.D.2d 274, 275, 671 N.Y.S.2d 100, 101 (2d Dep't. 1998). Here, plaintiffs seek benefits under their insurance policies, as well as damages allegedly due to racial discrimination. Live by the sword, die by the sword. Since they have elected to sue on the contract, the public policy of this State is that they are bound by its terms. *See Blitman Constr. Corp. v. Insurance Co.*, 66 N.Y.2d 820, 823, 498 N.Y.S.2d 349, 489 N.E.2d 236 (1985).

■ Defendant relies heavily on the Supreme Court's opinion in *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), for the proposition that there is no obligation to negotiate standard terms and conditions in standardized contracts, such as insurance contracts. *Shute* involved a ticket of passage on a Carnival Cruise. The plaintiff purchased her ticket through a travel agent in the State of Washington, and the ticket was sent to her upon receipt of payment. Carnival's standard terms and conditions appeared on the back of the ticket, together with a legend that "acceptance of this ticket" constituted an agreement to abide by all of the terms. One of these terms was a choice of forum clause. *Id.* at 587, 111 S.Ct. at 1524.

The United States Supreme Court rejected the Ninth Circuit's conclusion that a non-negotiated forum-selection clause in a form ticket contract is never enforceable simply because of the parties' unequal bargaining power, and the fact that the forum selection clause was not freely bargained for. *Id.* at 593, 111 S.Ct. at 1527. It noted that including a forum selection clause may be permissible for several reasons, notably: (1) a cruise line's interest in limiting the fora in which it could be subject to suit, (2) reducing confusion about where suits arising from the contract must be brought and defended, and (3) giving passengers the benefit of reduced fares reflecting savings enjoyed by limiting the fora in which the company may be sued. *Id.* at 593–94, 111 S.Ct. at 1527.

In upholding the forum selection clause in *Shute*, the Supreme Court emphasized that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." *Id.* at 595, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622. The Court, however, was not troubled by the cruise line's decision to require that its passengers sue the company in Florida—that was the company's principal place of business and the state from which many of its ships departed and returned. Furthermore, there was no allegation of fraud or overreaching, and plaintiffs conceded that they were given notice of the forum provision, and therefore, "presumably retained the option of rejecting the contract with impunity." *Id.*

There are only two differences between this case and *Shute*. The first is that we are dealing with an insurance policy; the second is that the parties spoke different languages. I have disposed of the second argument: while the applications and the General Conditions were presented to plaintiffs in German, they were free to demand translations and details prior to

signing the insurance applications, and then to accept or decline the policy if they were unhappy with the applicability of Swiss law. The open question, then, is whether an insurance policy is more like an "ordinary commercial cruise ticket," than a negotiated contract.

As any ordinary purchaser of insurance can attest, the question more or less answers itself. Insurance policies are rarely, if ever, the subject of negotiation. Insurance is offered on standard forms, subject to the insurer's stated conditions. Parties are free to buy the product offered or not, but only in extraordinary cases will a special contract of insurance, containing non-standard terms and conditions, be made available to a potential insured. Indeed, in the heavily regulated insurance industry, carriers are often required to file prototypes of their policies with regulators, and have terms and conditions approved in advance. And applicants frequently file applications and deposit premiums before they see the entire contract—just as the Shutes paid a travel agency for their Carnival Cruise tickets (which contained the choice-of-forum clause) before they received those tickets.

The reasoning in *Shute* has not been limited to tickets of commercial passage, *see, e.g., Roby v. Corporation of Lloyd's,* 996 F.2d 1353 (2d Cir.1993) (considering a choice-of-law clause in investor agreements), and an insurance policy is precisely the kind of contract to which its rule should extend.[1] *See Skandia America Reinsurance Corp. v. Schenck,* 441 F.Supp. 715, 723 (S.D.N.Y.1977) (noting that "New York courts will uphold choice of law clauses in insurance contracts provided that the law chosen bears a reasonable relationship to the transaction and violates no substantial state public policy").

Furthermore, the Second Circuit long ago agreed to enforce choice-of-law clauses on standard commercial contract tickets. *See Siegelman v. Cunard White Star, Ltd.,* 221 F.2d 189 (2d Cir.1955). Although the only other case this Court could locate involving a choice-of-law clause in a standard contract ticket, *Fricke v. Isbrandtsen Co.,* 151 F.Supp. 465 (S.D.N.Y.1957), declined to follow *Siegelman,* it is distinguishable. Fricke, a German national who spoke no English, purchased a ticket in Germany for round-trip passage to the United States. The long-form ticket, which was printed in English (no German translation was provided), contained a provision selecting "the laws of the United States" for all questions arising under the contract, and had a limitation provision of one year for suing the company. Although plaintiff had an opportunity to read the ticket or get it translated, she did not do so. On the return voyage, plaintiff was injured. *Id.* at 466. Defendant sought dismissal of her claim on the basis of the one-year provision. Plaintiff argued that German law, which would not give effect to the one-year time limit, should apply. *Id.*

Contrary to the facts in *Siegelman,* the *Fricke* court noted that "all of the incidents surrounding the sale of the ticket took place in Germany," so that plaintiff, if she considered any law, "probably felt that German law controlled." *Id.* at 468. The district court declined to dismiss the claim on the basis of the one-year provision, holding that "unless a party, in circumstances such as those found in the instant case, can be said to have understood that another law from the one normally governing the contract is to control, it would be improper to decide a question which poses a choice between legal systems having

---

1. *Shute* is not limited to choice of forum clauses, but can be read to extend to choice of law clauses as well. *See Roby,* 996 F.2d at 1363.

quite different jurisprudential philosophies on American contract law principles." *Id.*

Even if I believed (which I do not) that plaintiffs in this case can be compared to the unwitting Marie Fricke, who had no agent/translator working on her behalf when she purchased the ticket, the persuasive value of *Fricke* is limited. Not only was the case decided long before *Shute*, but the district court evaluated the choice-of-law clause under a different standard than the one used by New York courts in the present day. *See id.* at 467 ("[J]udicial inquiry is not confined to the contractual clause; the private selection is but one element, although a weighty one, determining the judicial finding of the appropriate law."). Since courts in New York began analyzing choice-of-law clauses under the current framework, the parties' choice (whether negotiated or not) has been bypassed in only a few instances, none of which has any applicability to this case. *See Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.,* 2000 WL 1702039, *13–*14 (S.D.N.Y. Nov. 13, 2000) (finding forum whose laws were selected in the contract had insufficient connection to transaction); *SG Cowen Securities Corp. v. Messih,* 2000 WL 633434, *4 (S.D.N.Y. May 17, 2000) (denying effect of New York law selection where California had greater interest in the transaction); *Ingeniera y Representaciones Internacionales, S.A. v. Stone & Webster Int'l Projects Corp.,* 1997 WL 529015, *2 (S.D.N.Y. Aug.25, 1997) (finding that Massachusetts has no interest in the

lawsuit and applying New York law, despite a provision allowing the purchaser (not a party in the case) to select either Massachusetts or the Dominican Republic); *North American Bank, Ltd. v. Schulman,* 123 Misc.2d 516, 520–21, 474 N.Y.S.2d 383, 387 (1984) (finding both insufficient connection to Israel and conflict with New York's laws against usury).

■ As plaintiffs themselves attest, the decisional law of the United States Supreme Court and the New York courts is part of the public policy of New York. Under that decisional law, enforcement of a choice of law clause in a standard form contract, which plaintiffs were in no way coerced into signing, does not violate the public policy of New York.

Finally, it cannot be said that application of the law of Switzerland—the country where the policies were issued—would offend any public interest in New York. "Public policy" necessarily entails some fundamental principle of justice, some deep-rooted tradition of the commonwealth. Plaintiffs, who chose to buy policies from a Swiss insurance company, bear the burden of proving that application of Swiss law would offend New York's public policy. They have not suggested a single thing about Swiss law that New York would find offensive.[2]

■ In short, I conclude that the choice of law clause in the contract of insurance does not offend the public policy

---

**2.** Indeed, it is hard to discern what it is that plaintiffs find offensive about Swiss law. During the course of these proceedings, this Court's attention has been called to two decisions of courts in Switzerland, in connection with these very policies, that would appear to bar defendant's counterclaims alleging it was fraudulently induced to issue the policies. Of course, my holding that the choice of law clause applies to plaintiffs' claim is not necessarily dispositive of whether Swiss law applies to the counterclaim. That issue will be briefed in conjunction with plaintiffs' motion for summary judgment on the counterclaim. If Swiss law applies, the counterclaim would appear to be in jeopardy, as the Swiss courts have already held that plaintiffs did not defraud defendant by failing to inform LaSuisse of the high marriage rate in plaintiffs' community.

of New York, or of the United States, and accordingly I shall enforce it.[3]

This constitutes the order and decision of the Court.

---

**3.** While this may seem inconsistent with my ruling on the motion to enforce the forum selection clause, *Weiss v. LaSuisse,* 69 F.Supp.2d 449, 455–56 (S.D.N.Y.1999), it is not. If possible, district courts are to construe forum selection clauses in ways that will not divest the United States courts of jurisdiction. I held that the language of the forum selection clause in plaintiffs' policies is permissive—it neither compels plaintiffs to sue LaSuisse only in Swiss courts nor precludes them from suing elsewhere—and as a result, venue in this district was proper. *Id.* at 455.