The COLEMAN COMPANY, INC. and Commercial Union Assurance, PLC, Plaintiffs,

v.

COMPAGNIE GENERALE MARITIME and Norfolk Southern Railway Company, Defendants.

No. CV 495–153.

S.D. of Georgia, Savannah Division.

Oct. 25, 1995.

Jane L. Peeples and Edwin D. Robb, Jr., Savannah, GA, for Plaintiffs.

William E. Dillard, III, Savannah, GA, for Defendant Norfolk.

## ORDER

NANGLE, District Judge.

Before the Court is the motion of defendant, Norfolk Southern Railway Company, to compel arbitration and stay proceedings in the above-captioned action pursuant to 9 U.S.C. §§ 3 and 4. For the reasons that follow, the Court will dismiss this action sua sponte for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3).

## BACKGROUND

The following facts are taken from plaintiffs' Complaint. In June of 1994, plaintiff, The Coleman Company, Inc. ("Coleman"), sold 169 cartons of camping equipment, coolers and jugs to a firm on the island of New Caledonia. In order to get the goods to New Caledonia, Coleman entered into a through contract of carriage with defendant, Compagnie Generale Maritime ("CGM"), in which CGM agreed to transport the goods from Coleman's place of business in Wichita, Kansas, to Noumea, New Caledonia. CGM, in turn, contracted with defendant, Norfolk Southern Railway Company ("Norfolk Southern"), to carry the goods by rail from Wichita, Kansas to Savannah, Georgia. CGM then planned to transport the goods by sea from the port of Savannah to New Caledonia on its ocean going container vessel, THE M/V RIMBAUD.

Pursuant to this arrangement, Coleman delivered the goods to CGM's agents in Wichita, Kansas on June 27, 1994. CGM's agents thereafter transferred the goods, in good order and condition, to Norfolk Southern for rail transportation to Savannah, Georgia. While in the custody of Norfolk Southern, however, the goods sustained water damage and consequently were not transported to Savannah for shipment to New Caledonia. The water damage to Coleman's goods totalled $10,811.85.

Plaintiff, Commercial Union Assurance, PLC ("CUA"), was the cargo underwriter for Coleman's goods. Accordingly, CUA paid Coleman for the loss it suffered as a result of the water damage to its goods. CUA thus brings this suit as the subrogee to Coleman's interests in the goods.

Plaintiffs' Complaint is captioned "Complaint in Admiralty," and they allege therein that this action involves admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The claims asserted by plaintiffs are as follows: (1) that CGM breached its contract of carriage by failing to deliver Coleman's goods; (2) that Norfolk Southern, as bailee of Coleman's goods, was negligent in failing to take proper care of the goods; and (3) that Norfolk Southern breached its contract of carriage for which CUA is entitled to recovery. Based upon these claims, plaintiffs seek the arrest of THE M/V RIMBAUD so that interlocutory judgments can be asserted against the vessel and entry of judgment against the defendants for all amounts owing, including interest and costs.

## DISCUSSION

Admiralty jurisdiction is conferred upon district courts by 28 U.S.C. § 1333(1), which provides that "[t]he district courts shall have original jurisdiction ... of ... [a]ny civil case of admiralty or maritime jurisdiction." Plaintiffs' Complaint, construed liberally, sets forth breach of contract claims against CGM and Norfolk Southern, and a tort claim against Norfolk Southern. The question, then, is whether these claims will sustain the Court's admiralty jurisdiction under section 1133(1).

### 1. Breach of Contract

■ It has long been the rule that a breach of contract action will not support admiralty jurisdiction unless the underlying contract is wholly maritime in nature. *Rea v. the Eclipse*, 135 U.S. 599, 608, 10 S.Ct. 873, 876, 34 L.Ed. 269 (1890); *Kuehne & Nagel (AG & CO) v. Geosource, Inc.*, 874 F.2d 283, 290 (5th Cir.1989); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 199 (2nd Cir.1992). There are, however, two exceptions to this general rule. The first is that, "if the character of a contract is primarily maritime and the non-maritime aspects are merely incidental, admiralty jurisdiction may still be invoked." *Kuehne & Nagel*, 874 F.2d at 290. The second is that, "if a contract is 'mixed'—having maritime and non-maritime aspects—maritime jurisdiction exists if the court can enforce the maritime obligations separately without prejudice to the rest." *Id.*

■ A contract to transport goods over both sea and land is generally not considered to be wholly maritime in nature. *See e.g., Kuehne & Nagel*, 874 F.2d at 290 (*citing* Gilmore & C. Black, The Law of Admiralty § 1–10 (1975)); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 881 (3rd Cir.1992). The contract of carriage between

Coleman and CGM was not, therefore, purely maritime in nature because it contemplated that Coleman's goods would be transported by rail (i.e. over land) from Wichita, Kansas to Savannah, Georgia, before being placed into maritime commerce. *See* Complaint ¶¶ 7 and 8.

The substantial distance between Wichita, Kansas and Savannah, Georgia, moreover, renders the first exception to the general rule inapplicable. Clearly, the land-based aspects of the contract were far more than merely "incidental" to the maritime services to be provided under the contract. *See Kuehne & Nagel*, 874 F.2d at 290 (concluding that portion of shipping contract requiring cargo to be trucked over 1000 miles of land was more than incidental to maritime operations under contract).

The second exception is also inapplicable because the maritime aspects of the contract between Coleman and CGM did not occur. The goods were damaged while in overland transit to Savannah and were not, therefore, placed into maritime commerce. There are, then, no maritime aspects of the contract to enforce. Furthermore, it is apparent from plaintiffs' Complaint that CGM agreed to ship the goods from Wichita to New Caledonia as a single, undivided obligation. *See* Complaint, ¶ 7. Thus, the maritime and non-maritime obligations of the contract are inseparable.

■ The Court does not, therefore, have admiralty jurisdiction over plaintiffs' breach of contract claim against CGM. Nor does the Court have admiralty jurisdiction over plaintiffs' claim against Norfolk Southern for allegedly breaching its contract of carriage. Norfolk Southern contracted with CGM to carry Coleman's goods by rail from Wichita to Savannah. This contract thus has absolutely no maritime aspects to it and cannot possibly support admiralty jurisdiction.

**2. Tort**

■ In order for a district court to have admiralty jurisdiction over a tort action, the tort must satisfy the two-pronged test of *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). "*Executive Jet* teaches that the court's admiralty jurisdiction will

attach in tort cases if the alleged wrong occurs on navigable waters (situs) *and* bears a significant relationship to traditional maritime activity (nexus)." *Kuehne & Nagel*, 874 F.2d at 288. Plaintiffs' tort claim against Norfolk Southern satisfies neither of these requirements because the damage to Coleman's goods occurred while they were in the custody of, and being transported by, a rail carrier. The alleged wrong did not, therefore, occur on navigable waters, nor did it bear a significant relationship to traditional maritime activity because a rail carrier's alleged negligence in allowing cargo to suffer water damage has little or no effect upon maritime commerce. Admiralty jurisdiction in this case cannot, then, be predicated upon a maritime tort.

There being no admiralty jurisdiction in this case under either a maritime contract or maritime tort theory, it is clear that this Court is without jurisdiction to entertain this action. Plaintiff's Complaint does not raise a question of federal law, nor does it place into controversy an amount exceeding $50,000.00, as required for jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332. Accordingly,

**IT IS HEREBY ORDERED** that the above-captioned action be and is dismissed for lack of subject matter jurisdiction.