**JOE BOXER CORP., et al., Plaintiffs,**

v.

**FRITZ TRANSP. INT'L,**
**et al., Defendants.**

**No. CV 97–9083 LGB (Mcx).**

United States District Court,
C.D. California.

May 19, 1998.

852

Stanley L. Gibson, Christopher J. Enge, Michael J. Cummins, Gibson & Bobb, San Francisco, CA, for Plaintiffs.

Stephen L. Bucklin, Michael S. McDaniel, Countryman & McDaniel, Los Angeles, CA,

for Defendants Fritz Tranp. Intern., Fritz Trans. Inteern. (HK) Ltd., Fritz Companies Inc.

Michael L. Armitage, Paul I. Hamada, Keesal Young & Logan, Long Beach, CA, for Defendant Maersk Line.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND.

BAIRD, District Judge.

## I. INTRODUCTION

Plaintiffs Joe Boxer Corporation and Federal Insurance Company move for remand of this case. Plaintiffs' Motion came on regularly for hearing on May 18, 1998. Having reviewed all pertinent papers on file and considered the arguments of counsel, for the reasons described below the Court DENIES Plaintiffs' Motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Joe Boxer contracted with Defendants to ship some cotton yarn from Shanghai, China to Guatemala City, Guatemala via the port of Long Beach, California. (Compl.¶ 5.) The bill of lading received by Plaintiff indicates that the "port of loading" was Shanghai, the "port of discharge" was Puerto Quetzal, Guatemala, and the "place of delivery by on-carrier" was Guatemala City, Guatemala. (Pls.' Mot.Ex. A.)[1]

Plaintiff alleges that when Defendants delivered the yarn, it was short by an amount worth $112,191.71. (Compl.¶ 6.) Plaintiff Federal Insurance Company insured the cargo for Plaintiff Joe Boxer, and has reimbursed Joe Boxer all but its $1,000 deductible. (Compl.¶ 7.)

Plaintiffs filed their Complaint in Los Angeles Superior Court on September 12, 1997. Defendants removed to this Court on December 10, 1997, on federal question grounds based on the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.*

Defendants did not allege diversity, nor does it appear that complete diversity exists.

Plaintiffs filed the instant Motion for Remand on April 17, 1998. Defendants filed an Opposition on May 4, 1998, and Plaintiffs filed a Reply on May 11, 1998. A hearing was held on May 18, 1998.

## III. ANALYSIS

### A. General Legal Standards for Removal Jurisdiction

 Congress has provided that:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where any such action is pending.

28 U.S.C. § 1441(a). Thus, the primary consideration in evaluating the propriety of removal is whether the district court has original jurisdiction of the action; i.e., whether the case could have originally been filed in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). If the case is within the original jurisdiction of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446. If the case is not within the original jurisdiction of the district court, removal is improper; such an absence of subject matter jurisdiction is not waivable by the parties. *See American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

In this case, there is no suggestion that complete diversity exists. Thus, removal is proper only if the Court has jurisdiction founded upon a federal question or other statutory grant of jurisdiction. As noted above, Defendants removed on the basis of COGSA providing a federal question, a con-

---

1. It appears to be undisputed that the yarn was shipped from Shanghai to Long Beach on the M/V Marie Maersk, transshipped in Long Beach to the M/V Inger C, which carried it to Puerto Quetzal, Guatemala, and then shipped inland to Guatemala City, Guatemala by truck.

tention that will be addressed below. Additionally, the Court will examine whether it has original jurisdiction based on admiralty jurisdiction, pursuant to 28 U.S.C. § 1333(1).

## B. Does COGSA Provide a Federal Question?

### 1. Legal Standards

■ Federal question jurisdiction exists only in cases where "a well-pleaded complaint establishes either that federal law creates the cause of action, or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Conversely, incidental references to federal law are insufficient for establishing federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 812, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Berg v. Leason,* 32 F.3d 422, 425–26 (9th Cir.1994).

■ The plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. "It is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425; *see also Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ Finally, federal jurisdiction must be rejected if there is any doubt as to the propriety of removal. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

### 2. Discussion

■ Plaintiff's Complaint nowhere refers to COGSA or any other federal law. Rather, it is a Complaint for "non-delivery of cargo"—an apparent contract claim. As described above, federal defenses generally do not provide a basis for removal.

■ There is, however, an exception to this rule involving so-called "complete preemption." When the preemptive force of a statute is "so extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," removal on this basis is permitted. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425. This doctrine is applied primarily in cases raising claims preempted by § 301 of the LMRA, *id.,* the Railway Labor Act, and certain ERISA cases, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ The parties did not discuss the doctrine of complete preemption in their papers. Moreover, the Court was unable to locate any authority discussing whether COGSA is "completely preemptive." However, several cases, although not discussing the issue in the modern vernacular, have held that removal was proper in cases governed by COGSA, despite the complaint being couched in state law terms. *See National Automotive Publications, Inc. v. United States Lines, Inc.,* 486 F.Supp. 1094 (S.D.N.Y.1980); *B.F. McKernin & Co., Inc. v. United States Lines, Inc.,* 416 F.Supp. 1068 (S.D.N.Y.1976); *Crispin Co. v. Lykes Bros. Steamship Co.,* 134 F.Supp. 704, 706 (S.D.Tex.1955). These cases are based on the principle that COGSA is not merely a defense, but an exclusive remedy for loss or damage to goods covered by its provisions. *See also Talatala v. Nippon Yusen Kaisha Corp.,* 974 F.Supp. 1321, 1324 n. 1 (D.Haw.1997). Thus, any "artfully pled" state law causes of action are in reality claims arising under COGSA, and thus removable. This Court agrees that COGSA completely preempts the field so that any claims, no matter how denominated by the plaintiff, involving loss or damage to goods in situations governed by COGSA "arise under" federal law, providing for federal question jurisdiction.

■ The next issue is whether COGSA applies to this case. COGSA by its terms applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea *to or from ports of the United States,* in foreign

trade." 46 U.S.C.App. § 1300 (emphasis added). Defendants argue that the carriage of goods in this case was both to and from Long Beach, California, thereby implicating COGSA. Plaintiff argues that the carriage of goods was from China to Guatemala, and the fact that this shipment was "via" Long Beach is irrelevant. Plaintiff further argues that COGSA applies to *bills of lading*, not to the underlying shipments themselves, and in the instant case, the bills of lading do not even mention Long Beach—they only refer to China and Guatemala. (*See* Pls.' Mot.Ex. A (copy of bill of lading).)

The only case on point cited by the parties or located by the Court is *Complaint of Damodar Bulk Carriers, Ltd.*, 903 F.2d 675 (9th Cir.1990). In *Damodar*, the bill of lading evidenced a contract for carriage of goods from Chile to China. While en route a fire broke out, and the ship stopped in Hawaii, discharging some of the damaged cargo. The Ninth Circuit held that this "distress discharge" was insufficient to invoke COGSA *ex proprio vigore*.[2] *Id.* at 680. Defendants distinguish *Damodar* on the obvious ground that the discharge of cargo there was unexpected and in response to exigent circumstances. (Defs.Opp. at 3.) However, the Ninth Circuit described the *Damodar* ship's journey as being "from Lirquen, Chile, to China *via Hawaii* and Japan." *Id.* at 677 (emphasis added). Additionally, the ship made a scheduled stop in Hawaii, apparently to pick up fuel. *Id.* Therefore, the situation in *Damodar*, like the instant case, was of a shipment of goods from one foreign port to another, with a stop in the United States.

Thus, the only real distinguishing fact is that in the instant case, the cargo was transshipped from one vessel to another in Long Beach, while in *Damodar*, the cargo apparently was intended to remain on the same ship for its entire journey. This is a slim reed for distinguishing *Damodar*, particularly when considering the fact that Plaintiff clearly cared only about shipping its yarn from China to Guatemala—none of the yarn was to remain in Long Beach, and Plaintiff was completely indifferent to the fact that Long Beach was even involved at all.

 Defendants argue that "Plaintiffs readily admit that the subject cargo was transported from Shanghai, China, *to* Long Beach, California and *from* Long Beach, California to Guatemala. That transport is indisputably to and from the United States in foreign trade." (Defs.' Opp. at 2 (emphasis in original).) The problem with this argument is that it would apply to *Damodar* too. Ignoring the emergency stop for the moment, the *Damodar* ship was scheduled to stop in Hawaii. Thus, in the strictly technical way in which Defendants interpret COGSA, its cargo traveled to and from Hawaii, even without the emergency stop; yet, the Ninth Circuit held that COGSA did not apply of its own force. Although the *Damodar* cargo was not intended to be transferred to another ship in Hawaii, that seems irrelevant. This Court finds that the best reading of COGSA is that it only applies in circumstances in which the cargo engaged in foreign trade has a point of origination or ultimate destination is in the United States. Under this reading, COGSA clearly does not apply in this case, as the yarn neither originated in the United States, nor was intended to end up in the United States.[3]

---

2. Although the Ninth Circuit held that COGSA *did* apply due to a contractual provision in the bill of lading incorporating the terms of COGSA, this is irrelevant for purposes of the instant Motion, since there has been no suggestion that the bills of lading here contained a similar provision. Moreover, even if they did, this would not affect the Court's jurisdiction, as subject matter jurisdiction cannot be granted by agreement of the parties. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988).

3. At oral argument, Defendants argued that *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438 (9th Cir.1974), suggested a different result. In *Tessler*, COGSA applied to a bill of lading for a shipment between Italy and British Columbia that discharged cargo in distress in Tacoma, Washington. However, the bill of lading in *Tessler* incorporated COGSA, *see id.* at 440, and as the Ninth Circuit noted in *Damodar*, it is unclear whether the *Tessler* court was applying COGSA *ex proprio vigore* or merely as a contractual term. *See Damodar*, 903 F.2d at 680–81 n. 8. *Damodar*, in holding as it did, necessarily considered *Tessler* to have applied only by virtue of the contractual incorporation of COGSA. Accordingly, *Tessler* is of no help to Defendants here.

Defendants present evidence that Maersk offered no direct route from Shanghai to Guatemala, and that any such shipment could only have been done by means of a transshipment in the United States. (Radcliffe Decl. ¶ 7.) However, this is irrelevant. The bottom line is that Plaintiffs contracted for (and the bills of lading describe) shipment *from* Shanghai *to* Guatemala. This is not "carriage of goods by sea to or from ports of the United States, in foreign trade." 28 U.S.C.App. § 1300. Accordingly, COGSA does not apply, and thus, cannot form the basis of federal jurisdiction for removal.

## C. Does Admiralty Jurisdiction Apply to this Case?

As an alternative basis for federal jurisdiction, Defendants point to the Court's admiralty jurisdiction. Congress has provided that:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> > (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333(1). Generally, a contract case is within the admiralty jurisdiction only if it is "wholly maritime in nature." *Simon v. Intercontinental Transport (ICT) B.V.*, 882 F.2d 1435, 1442 (9th Cir.1989). However, an exception to this general rule exists where the nonmaritime obligations are merely "incidental" to the primary maritime nature of the contract. *Id.* Plaintiffs cite two cases in which district courts found intermodal [4] transportation contracts to not be within admiralty jurisdiction. However, these cases involved land transportation of great distances. *See Coleman Co., Inc. v. Compagnie Generale Maritime*, 903 F.Supp. 45 (S.D.Ga. 1995) (bill of lading was Kansas to New Caledonia; rail from Kansas to Georgia, then ship from Georgia to New Caledonia); *New York Marine & Gen. Ins. Co. v. S/S MING PROSPERITY*, 920 F.Supp. 416 (S.D.N.Y. 1996) (bill of lading was Hong Kong to New York; ship from Hong Kong to Los Angeles, then rail from Los Angeles to New York).

Both of these courts held that the land transport over such large distances was not "incidental" to the sea transport, making admiralty jurisdiction unavailable. *See Coleman*, 903 F.Supp. at 48 ("the substantial distance ... renders the [exception] inapplicable. Clearly, the land-based aspects of the contract were far more than merely 'incidental' to the maritime services to be provided under the contract"); *Ming Prosperity*, 920 F.Supp. at 420 ("the land transportation may not be considered incidental given the large distance involved"); *see also Kuehne & Nagel (AG & CO) v. Geosource, Inc.*, 874 F.2d 283, 290 (5th Cir.1989) ("such extensive [1000 mile truck transport] land based operations cannot be viewed as merely incidental to the maritime operations").

In clear contrast is the instant case. The maritime based portion of the transportation was from Shanghai, China to Guatemala City, Guatemala. The land-based portion was only 62 miles.[5] This is a far cry from the situation presented in the cases cited by Plaintiffs. Plaintiffs make a slippery slope argument in their Reply, arguing that if 62 miles is "incidental" there is no clear line between incidental and non-incidental. While it may be true that there is no clear line between incidental and non-incidental, the absence of a clear line does not prevent courts from deciding whether a given case is on one side of the line or another. Other courts have found that intermodal contracts can be within admiralty jurisdiction. *See Luallipam*, 631 F.Supp. at 1475–76 (admiralty jurisdiction existed despite intermodal contracts including land transportation from Pennsylvania, Massachusetts, Florida, Texas, and Louisiana to ports located in other cities in Maryland, North Carolina, New Jersey,

---

4. "Intermodal cargo or shipment is cargo or shipment that moves by water and land transportation on a single bill of lading." *Puerto Rico Maritime Shipping Authority v. Luallipam, Inc.*, 631 F.Supp. 1472, 1473 n. 2. (D.P.R.1986).

5. The Court takes judicial notice of the distance between Puerto Quetzal and Guatemala City, Guatemala, as such a fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2); Defs.' Req. for J. Not.

Florida, and Louisiana); *Sklut Hide & Furs v.. Prudential Lines, Inc.,* 537 F.Supp. 266 (D.Del.1982) (admiralty jurisdiction existed despite intermodal contract including land transportation from one city to another). Under Plaintiffs' argument, admiralty jurisdiction over shipments by sea would be defeated in every case involving brief land transportation following the sea-based portion of the shipment. That is not the law.

As the *Luallipam* court succinctly described, "in other situations where courts have found intermodal transportation contracts to be non-maritime, the land transportation portion of the contract was either considerable or was the very raison d'etre of the transportation contract." *Luallipam,* 631 F.Supp. at 1476 (internal citations omitted). In the instant case, the land portion of the transportation was neither considerable nor the very reason for the contract; rather, this Court finds that a 62 mile land trip following a sea voyage from one continent to another is merely incidental to the maritime aspects of the contract. Accordingly, this case is within the admiralty jurisdiction of this Court.

■ However, one small inquiry remains. There is substantial authority that admiralty jurisdiction, though providing the district courts with original jurisdiction, does not support removal of cases originally filed in state court. In other words, plaintiffs are the masters of their admiralty cases; they may choose to file in federal court utilizing admiralty jurisdiction, or they may choose to file in state court utilizing the "saving to suitors" clause of 28 U.S.C. § 1333(1). Whatever their choice, however, defendants may not upset it by removing, unless complete diversity exists. *See Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1543 (5th Cir. 1991); *Pierpoint v. Barnes,* 94 F.3d 813, 816 (2d Cir.1996); *Zoila–Ortego v. B J–Titan Servs. Co.,* 751 F.Supp. 633, 637 (1990); Charles Alan Wright, *Law of Federal Courts* 228 (5th ed.1994).

■ Although this line of authority would ordinarily require remand in the instant case, one crucial fact changes this outcome—Defendants removed this case on December 10, 1997, but Plaintiffs did not file their Motion to Remand until April 17, 1998. Congress has provided that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). This section, the result of a clarification by a 1996 amendment, clearly imposes a 30 day limit on all motions to remand except in those cases where the court lacks subject matter jurisdiction. *See* H.R.Rep. No. 104–799, at 3 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3417.

■ The improper removal of a case filed in state court under the saving to suitors clause is not a lack of subject matter jurisdiction; accordingly, it is subject to the 30 day time limit for remand motions. *See Baris,* 932 F.2d at 1543–46; *Pierpoint,* 94 F.3d at 816–17; Wright, *Law of Federal Courts* at 228 n. 34. Thus, by waiting more than 30 days, Plaintiffs have waived any objection to removal in this case. *See Baris,* 932 F.2d at 1543 (lack of removal jurisdiction, unlike lack of original subject matter jurisdiction, is waivable).

## IV. CONCLUSION .

For the foregoing reasons, the Court finds that COGSA is "completely preemptive," permitting the removal of cases governed by it; however, the instant case is not governed by COGSA *ex proprio vigore* because the shipment in question was from Shanghai to Guatemala, which is not "carriage of goods by sea to or from ports of the United States, in foreign trade." Accordingly, there is no federal question jurisdiction based on COGSA supporting removal in this case. There is, however, admiralty jurisdiction because the contract in question was maritime in nature but for the merely incidental 62 mile land transport from Puerto Quetzal, Guatemala to Guatemala City, Guatemala. Thus, this case could have originally been filed in this Court; the fact that Plaintiffs chose to file in state court under the saving to suitors clause is irrelevant because Plaintiffs waived their ob-

jection to Defendants' improper removal by not filing their Motion to remand within 30 days of the removal. Consequently, Plaintiffs' Motion to Remand is hereby DENIED.

**IT IS SO ORDERED.**