230 F.3d 549 (2nd Cir. 2000)
 HARTFORD FIRE INSURANCE CO., a/s/o Trek Bicycle Corp., Plaintiff-Appellee,
v.
ORIENT OVERSEAS CONTAINERS LINES (UK) LTD., OOCL (EUROPE) LTD., ORIENT OVERSEAS CONTAINER LINE, AND OOCL (USA) INC., Defendants Appellants.
 Docket No. 99-9502
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: June 7, 2000
Decided: October 27, 2000
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Douglas F. Eaton, Magistrate Judge) granting summary judgment in favor of plaintiff and awarding damages for stolen cargo. The District Court held that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300 et seq., governed the entire intermodal carriage of goods and, therefore, the limitation-of-liability provision in COGSA applied to defendants' liability for cargo lost during transport by truck following discharge from vessel.
 Vacated and remanded. [Copyrighted Material Omitted]
 DAVID L. MAZAROLI, New York, NY, for Plaintiff-Appellee.
 THOMAS L. TISDALE, Tisdale & Lennon, LLC, New York, NY, for Defendants-Appellants.
 Before: WALKER and CABRANES, Circuit Judges, and HODGES, District Judge.*
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 We are asked to decide the law to be applied to the loss of cargo during an "intermodal" shipment of goods-that is, a shipment carried by water and land transportation on a single bill of lading. Defendants Orient Overseas Containers Lines (UK) Ltd., OOCL (Europe) Ltd., Orient Overseas Container Line, and OOCL (USA) Inc. appeal from a November 24, 1999 judgment of the United States District Court for the Southern District of New York (Douglas F. Eaton, Magistrate Judge). That Court granted summary judgment in favor of plaintiff Hartford Fire Insurance Co. ("Hartford") and awarded damages for cargo shipped originally from Wisconsin and stolen in Belgium during the final land segment of a shipment to The Netherlands under a bill of lading issued by defendants to Hartford's insured and subrogor, Trek Bicycles Corp. ("Trek"). The District Court concluded that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§1300 et seq., governed the entire intermodal carriage from Wisconsin to The Netherlands and, therefore, that COGSA's limitation-of-liability provision applied even though the cargo was lost while being transported by truck in Europe after discharge from the vessel. For the reasons stated below, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 In August 1996, defendant OOCL (USA) Inc., as agent for defendant OOCL (UK) Ltd.,[1] entered into a one-year service agreement with Trek to move certain cargo containers from Wisconsin to various destinations in Europe. Two months later, OOCL (UK) issued to Trek a "through bill of lading"[2] for the shipment of a container of 301 packages of bicycles and bicycle framesets from Oconomowoc, Wisconsin to Spijkenisse, The Netherlands. The bill of lading indicated that OOCL (UK) would serve as the "Carrier" for the water segment of the carriage, while other unnamed "Participating Carriers" would transport the container for the land portions of the carriage.
 
 
 3
 Pursuant to this arrangement, the container was picked up at Trek's facility in Oconomowoc and transported by truck to Chicago. From Chicago, the container was moved by rail to Montreal, Canada, where it was loaded onto defendants' vessel, the M/V OOCL Bravery. Defendants transported the container by sea from Montreal to Antwerp, Belgium, and then discharged it to a participating carrier who was supposed to transport it by truck to the consignee's premises in Spijkenisse.
 
 
 4
 Defendants had selected DeBrock Gebr. Transport, N.V. ("DeBrock") as their trucker between Antwerp and inland destinations in Europe, but DeBrock subcontracted with N.V. Groeninghe ("Groeninghe") to transport Trek's container from Antwerp to Spijkenisse. On October 29, 1996, a Groeninghe truck picked up the container from defendants' ship at Antwerp. Later that evening, thieves stole the truck, together with the container of Trek's bicycles, after the truck had been left on a public road without any supervision or guard near the driver's domicile in Deurne, Belgium. The police were able to track down approximately 30 of Trek's 301 stolen packages, but the remainder were never recovered.
 
 
 5
 In November 1996, Trek filed a claim with its insurer, Hartford, for the value of the missing packages. Hartford reimbursed Trek on the claim and then, as subrogated insurer, commenced the instant action for recovery of the value of the missing cargo plus incidental expenses. Defendants responded by setting forth two reasons for why their liability should be limited under Clause 4 of the bill of lading.[3] First, they maintained that, as the "Carrier" under the bill of lading, they were exonerated from liability under Clause 4 because the cargo was lost while in the custody of a "Participating Carrier." Second, they contended that, even if they were liable under the bill, Clause 4 subjected their liability to the limits established by the law governing the particular transport stage during which the goods were stolen-namely, the Convention on the Contract for the International Carriage of Goods by Road, May 19, 1956, 399 U.N.T.S. 189 et seq. ("CMR").
 
 
 6
 In its Memorandum and Order dated November 19, 1999, the District Court rejected both of these arguments and granted summary judgment in favor of Hartford. Holding that COGSA "applies to the entire intermodal carriage, including the period of time when the goods were in the trucker's custody," the Court concluded that defendants could not avail themselves of either the exoneration provision in the bill of lading (Clause 4) or CMR's limitation-of-liability provision, because both provisions are inconsistent with COGSA.[4] Section 3(8) of COGSA provides that:
 
 
 7
 [a]ny clause . . . in a contract of carriage relieving the carrier or the ship from liability . . . arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Chapter, shall be null and void and of no effect.
 
 
 8
 46 U.S.C. § 1303(8). COGSA, therefore, prohibits a carrier from reducing its liability by inserting an exculpatory clause in its shipping contract. The District Court found that defendants' invocation of the exoneration provision in the bill of lading and CMR's limitation-of-liability provision was an attempt to circumvent this prohibition. Accordingly, it declined to apply either provision.
 
 
 9
 The District Court also found that the application of CMR's limitation-of-liability provision would violate the "fair opportunity" doctrine, which is a federal common law doctrine developed in admiralty. Under the "fair opportunity" doctrine, a shipper must have had a "fair opportunity" to declare a higher liability value for its cargo in order for a carrier to limit its liability under COGSA. See General Elec. Co. v. MV Nedlloyd, 817 F.2d 1022, 1028 (2d Cir. 1987). Applying this doctrine, the District Court found that defendants had failed to provide the shipper, Trek, with an opportunity to declare a cargo value higher than CMR's limit. Accordingly, the Court refused to limit Hartford's recovery under CMR and granted summary judgment in Hartford's favor for the full market value of the unrecovered cargo plus incidental costs. Defendants filed a Notice of Appeal on December 17, 1999, and an Amended Notice of Appeal on February 1, 2000.
 
 II.
 
 10
 We consider at the outset Hartford's claim that we lack appellate jurisdiction as to defendants OOCL (USA) Inc. and OOCL (Europe) Ltd. because they failed to file a timely appeal. Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure requires a party to file an appeal within 30 days of entry of judgment.[5] Hartford maintains that OOCL (UK) was the only defendant identified in the initial Notice of Appeal, and that 45 days had elapsed before other defendants were specifically designated as appealing parties in the Amended Notice of Appeal. Hartford contends that we must therefore dismiss this appeal with respect to defendants OOCL (USA) and OOCL (Europe).
 
 
 11
 Hartford is correct that the Amended Notice of Appeal is untimely, but dismissal is not warranted in the circumstances presented here because the initial Notice of Appeal provided adequate notice of the intent of all defendants to appeal. The Rules provide that "[a]n appeal must not be dismissed for informality of form . . . or for failure to name a party whose intent to appeal is otherwise clear from the notice." FED. R. APP. P. 3(c)(4). The test for determining whether a Notice of Appeal is adequate "is whether it is objectively clear that a party intended to appeal." FED. R. APP. P. 3(c) advisory committee note (1993 amendment); see also Maerki v. Wilson, 128 F.3d 1005, 1007 (2d Cir. 1997) ("[W]hat constitutes compliance with [Rule 3(c)] has clearly been 'liberalized.'"). In this case, the initial Notice of Appeal refers in a parenthetical phrase to every defendant.[6] The caption of the Notice also lists each defendant as a party to the case. Such references demonstrate a clear intention by all defendants to appeal the District Court's judgment. Cf. Agee v. Paramount Communications, Inc., 114 F.3d 395, 399-400 (2d Cir. 1997) (finding no appellate jurisdiction over an attorney's appeal where the attorney failed to list himself as a party to the appeal in the caption or body of the Notice of Appeal). Accordingly, we conclude that we have appellate jurisdiction over every defendant and proceed to the merits of the appeal.
 
 III.
 
 12
 Our primary task is to determine the appropriate law that governs the final overland portion of the carriage. To complete this task, we must first address the issue of subject matter jurisdiction.
 
 A.
 
 13
 In its complaint, Hartford alleges that this case falls within both our admiralty and diversity jurisdictions. Defendants argue, in response, that no admiralty jurisdiction exists. Rather than resolve this issue, the District Court proceeded to analyze the case under its diversity jurisdiction, which is undisputed. We must address the question of whether this case falls under our admiralty jurisdiction because both the District Court's opinion and Hartford's arguments are based, in part, on the application of federal common law principles developed in admiralty. In the District Court's view, defendants cannot avail themselves of CMR's limitation-of-liability provision because they failed to provide Trek with a "fair opportunity" to declare a higher cargo value, in contravention of federal common law. Hartford similarly relies on federal common law when it claims that the exoneration provision in the bill of lading violates the common law principle that holds carriers contractually liable for the acts of their subcontractors. See Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 811-12 (2d Cir. 1971) (holding, as a matter of federal common law, that a carrier is responsible for the loss of cargo due to a subcontractor's negligence). Because "federal common law developed in admiralty [is] not freely transferable to the diversity setting," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28 (1988) (citing Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641 42 (1981)), we must answer the question that the District Court avoided and determine whether there is admiralty jurisdiction.
 
 
 14
 The general rule for exercising admiralty jurisdiction in a contract case is that "jurisdiction arises only when the subject-matter of the contract is 'purely' or 'wholly' maritime in nature." Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp., 109 F.3d 105, 109 (2d Cir. 1997) (citing Rea v. The Eclipse, 135 U.S. 599, 608 (1890)). "Mixed" contracts, which involve obligations for both sea and land carriage, generally do not fall within a federal court's admiralty jurisdiction. See id.; see also, e.g., Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 881 (3d Cir. 1992) (holding that a bill of lading providing for "partial sea and partial land transport" would not give rise to admiralty jurisdiction). The bill of lading in the case at bar qualifies as a "mixed contract," as Trek's container was to travel by land from Oconomowoc to Montreal, by sea from Montreal to Antwerp, and again by land from Antwerp to Spijkenisse. Accordingly, the bill ordinarily would not fall within our admiralty jurisdiction.
 
 
 15
 Notwithstanding this general rule, we have held that a federal court can exercise admiralty jurisdiction over a "mixed" contract if: (1) the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract; or (2) the land-based portion of the contract is "merely incidental" to the sea-based portion. See Transatlantic Marine, 109 F.3d at 109. Neither of these exceptions, however, applies in this case.
 
 
 16
 The first exception does not apply because, even if the maritime obligations were severable, the loss of Trek's container did not arise from a breach of such obligations; rather, the loss occurred while the cargo was being transported on land in Belgium. See id. (explaining that the first exception is not available where the loss at issue arises from non-maritime activity).
 
 
 17
 The second exception also fails to provide a ground for admiralty jurisdiction in this case. Transport by land under a bill of lading is not "incidental" to transport by sea if the land segment involves great and substantial distances. Berkshire, 954 F.2d at 881 (holding that extensive cross-United States transport is not an incidental aspect of a shipping contract); see also Kuehne & Nagel (AG & Co.) v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir. 1989) (deciding that a carriage of goods of up to 1000 miles was more than incidental to the maritime portion of the contract); Coleman Co. v. Compagnie Generale Maritime, 903 F. Supp. 45, 48 (S.D. Ga. 1995) (describing the transport by rail from Kansas to Georgia as "far more than merely 'incidental'"). Although the record in the instant case does not reveal the exact mileage that the cargo would travel by land or sea under the bill of lading, the land segment of the carriage is clearly more than "incidental" to the water segment. The bill involves land shipment from: (1) Oconomowoc to Chicago by truck; (2) Chicago to Montreal by rail; and (3) Antwerp to Spijkenisse by truck. We take judicial notice that the sum of these segments of overland transportation is at least 850 miles. See THE NEW INTERNATIONAL ATLAS 52, 176-77, 216-17 (Rand McNally & Co. ed., 1980) (providing scaled maps that show the sum of distances between these cities); cf. Deutch v. United States, 367 U.S. 456, 470 (1961) (taking judicial notice of the fact that Ithaca is more than one hundred and sixty five miles from Albany); Boyce Motor Lines v. United States, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography."). Furthermore, the bill requires carriage by land through four countries using two different modes of transportation (truck and rail) and several different "participating carriers." Cf. Alaska Barge and Transp., Inc. v. United States, 373 F.2d 967, 971 (Ct. Cl. 1967) (examining the "overall subject matter of the contracts and the nature and importance of the overland services" rather than relying strictly on "mathematical computations" to determine whether carriage of cargo by land is incidental). We therefore conclude that the bill of lading in this case involves land carriage that is more than "incidental" to sea carriage, thus placing this dispute outside of our admiralty jurisdiction.
 
 B.
 
 18
 In the absence of admiralty jurisdiction, this case is governed, under diversity jurisdiction, by applicable state choice-of-law rules. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497 (1941). Specifically, we are required to apply the choice-of-law rules of the state in which the trial court sits, which in this case is New York. See id. New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction. See International Minerals and Resources, S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996). We therefore turn to the choice-of-law provisions in the contract at issue here-the bill of lading-to determine the law that governs this case.
 
 
 19
 As is often true in disputes regarding contracts for transportation, the bill of lading in this case is not a model of careful draftsmanship. Amazingly, there are two applicable choice-of-law provisions in the bill. The first, Clause 4, provides that "[e]ach stage of the transport shall be governed according to any law and tariffs applicable to such stage." See supra note 3. The second, Clause 23, states in relevant part that
 
 
 20
 [a]ll carriage under this Bill of Lading to or from the United States of America[] shall have effect subject to the provisions of COGSA (or if this Bill of Lading governs carriage to or from Canada, it shall have effect subject to COGWA) which shall be deemed to be incorporated herein. . . . Except as otherwise provided herein, COGSA [or] COGWA . . . shall govern the Goods before loading on board and after discharge from the Vessel and while subject to this Bill of Lading.
 
 
 21
 (emphasis added).
 
 
 22
 The resulting confusion over the governing law is unsurprising, for Clause 23 seems to indicate that COGSA governs that portion of the trip after Trek's container left defendants' ship at Antwerp, while Clause 4 suggests that the laws of Belgium, which has ratified CMR,[7] control this stage of the carriage.
 
 
 23
 In resolving this conflict, the District Court gave undue weight to some fragments of Clause 23 and essentially ignored Clause 4. The Court held that COGSA applies to the entire intermodal carriage, including the period of time when the goods were in the trucker's custody in Belgium. It based this holding on a determination that COGSA imposes responsibility on a carrier for the acts of its agents regardless of conflicting contractual provisions such as Clause 4. It therefore refused to enforce provisions in the bill of lading that, in seeming contravention of this federal statute, reduced defendants' liability.
 
 
 24
 We conclude that this was error. The District Court's reasoning rests on the incorrect assumption that COGSA applies here by its own force, or in the quaint and famous Latin aphorism of the law, ex proprio vigore. COGSA only applies by its own force, however, during "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e). A carrier and a shipper can extend COGSA so that it applies prior to loading and subsequent to discharge of goods from a ship, see 46 U.S.C. §1307,[8] but the extent of any application beyond the scope of the statute is a matter of contract. See Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313, 315 (2d Cir. 1983) ("Parties may contractually extend COGSA's application beyond its normal parameters. When they do so, however, COGSA does not apply of its own force, but merely as a contractual term."). In this case, the parties agree that the bill of lading extended COGSA beyond its normal statutory reach.[9] Consequently, if COGSA applied to the instant case, it would do so only by virtue of contract and not ex proprio vigore.[10] As a rule adopted by and in a contract, COGSA is modifiable by other language contained in the bill of lading. See Pannell v. United States Lines Co., 263 F.2d 497, 498 (2d Cir. 1959) (Swan, J.) (explaining that terms of a contract can prevail over the provisions of COGSA when COGSA does not apply ex proprio vigore). The bill of lading explicitly recognizes this possibility, as Clause 23 provides that COGSA applies "[e]xcept as otherwise provided herein." This language envisages the possibility that other provisions of the very same bill of lading will provide for a law other than COGSA for certain portions of the shipment.
 
 
 25
 Clause 4 provides the exception contemplated by Clause 23 when it states that "[e]ach stage of the transport shall be governed according to any law and tariffs applicable to such stage." Under Clause 4, the governing law may change as the cargo moves through different stages of transport, thereby indicating that COGSA may not apply throughout the entire intermodal carriage. We believe that the most reasonable way to read Clause 23 in conjunction with Clause 4 is to interpret them as providing for the application of the law embodied in COGSA at all stages of shipment, unless there exists a different law directly applicable to that stage of shipment. If there exists a law other than COGSA that would otherwise directly apply to the stage of transport, that law would control. In other words, COGSA applies by contract to the overland portion of the carriage only to the extent that no other law is directed specifically at this portion of the carriage.[11]
 
 
 26
 Other interpretations of these provisions would render either Clause 4 or Clause 23 superfluous. If we were to agree with the District Court that COGSA applied throughout the entire intermodal carriage, the language in Clause 4 that "[e]ach stage of the transport shall be governed according to any law . . . applicable to such stage" would become meaningless. Likewise, if we were to hold that the governing law is any generally applicable law (rather than a law specifically directed at the stage of transport), the language in Clause 23 that COGSA "shall govern . . . after discharge from the Vessel" would be rendered ineffective.
 
 
 27
 In a situation of potential contract ambiguity, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable. See Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988); Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985). We conclude, therefore, that the most reasonable interpretation of the interplay of the two choice-of-law provisions at issue here is that they provide for the application of COGSA unless there is a different law specifically directed at the particular stage of transport, in which case the latter governs.
 
 
 28
 We recognize that our interpretation of Clauses 4 and 23 may create uncertainty for shippers who choose to transport goods under a through bill of lading similar to the one at issue here. Nevertheless, we have explained that "[s]uch uncertainty . . . is inherent to international shipping, and it in fact explains the longstanding efforts, embodied in the various multilateral conventions . . . to create greater uniformity in liability limits and other rules relating to bills of lading." Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing, 167 F.3d 99, 102 (2d Cir. 1999). In any event, contracting parties are able to reduce this uncertainty by drafting a bill of lading that provides for the application of a single law during all stages of transport; but the parties in this case did not do so.
 
 
 29
 The loss at issue in the case at hand arose from a truck shipment of bicycles stolen in Belgium, a country which has ratified CMR. Article 1 of CMR states that CMR "shall apply to every contract for the carriage of goods by road in vehicles for reward" between two countries, one of which has ratified CMR. CMR, art. 1, sec. 1, 399 U.N.T.S. 189 (emphasis added). Because CMR applies by force of law, it specifically relates to the stage of transport in Belgium and qualifies as a "law applicable to [the relevant stage of transport.]" Accordingly, we conclude that defendants' liability must be assessed using the relevant portions of this body of law.[12]
 
 IV.
 
 30
 The District Court did not enforce the exoneration provision in Clause 4 or apply CMR's limitation-of-liability provision because it erroneously believed that COGSA applied to all stages of the carriage of goods in the instant case. Because we conclude that CMR, not COGSA, governs in the circumstances presented here, the judgment of the District Court is vacated and the cause is remanded for further proceedings. On remand, the District Court should determine whether CMR enables defendants to avail themselves of the exoneration provision in Clause 4 of the bill of lading. If CMR does, the District Court should hold defendants liable only for the loss that can be attributable to their acts, not those of "Participating Carriers." If CMR does not, the District Court should then decide whether defendants qualify for limitation of liability under CMR. Specifically, the Court must evaluate Hartford's contention that, even if CMR applied, defendants cannot avail themselves of its limitation-of-liability provision because they engaged in willful misconduct in contravention of CMR. See supra note 12. If the Court completes this analysis and determines that defendants qualify for CMR's limitation-of-liability provision, it should limit Hartford's recovery to the amount provided for by these provisions.
 
 V.
 To summarize, we hold that:
 
 31
 (1) each defendant filed a timely appeal within the time required by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure;
 
 
 32
 (2) the proper subject matter jurisdiction of this case is diversity, not admiralty, and, therefore, the federal common law developed in admiralty is not applicable;
 
 
 33
 (3) the appropriate law to apply under the bill of lading with respect to the loss of goods in Belgium is CMR, not COGSA;
 
 
 34
 (4) the District Court must determine on remand the validity of the exoneration provision in the bill of lading (Clause 4) under CMR; and
 
 
 35
 (5) the District Court must decide on remand whether, given the parties' conduct, defendants qualify for CMR's limitation-of-liability provision.
 
 
 36
 Accordingly, the judgment of the District Court is vacated and the cause is remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable William Terrell Hodges, of the United States District Court for the Middle District of Florida, sitting by designation.
 
 
 [1]
 Defendants maintain that OOCL (Europe) Ltd. and OOCL (USA) Inc. were agents acting on behalf of OOCL (UK) Ltd. In addition, they assert that the named defendant Orient Overseas Container Line is merely a trade name for transportation provided by, among others, OOCL (UK). We refer to them collectively as "defendants."
 
 
 [2]
 A "bill of lading" is a "document evidencing the receipt of goods for shipment issued by a person engaged in the business of transporting or forwarding goods." U.C.C. § 1-201(6). A "through bill of lading" is one by which a carrier agrees to transport goods from origin to destination, even though different carriers (such as a railroad, trucker, or air carrier) may perform a portion of the contracted shipment. See Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 588 n.3 (5th Cir. 2000).
 
 
 [3]
 Clause 4 provides in relevant part:
 Each stage of the transport shall be governed according to any law and tariffs applicable to such stage. The care, custody and carriage of the Goods during any period in which a Participating Carrier or its contractor or agent is in possession of the Goods shall be the sole responsibility of the Participating Carrier and not the Carrier.
 
 
 [4]
 Both COGSA and CMR limit a carrier's liability to a pre-determined amount unless the shipper declares a higher cargo value and pays the carrier's ad valorem freight charge. COGSA limits the carrier's liability to $500 per package. See 46 U.S.C. § 1304(5). CMR, on the other hand, limits liability to an amount based on the weight of the shipment. See Art. 23, 399 U.N.T.S. 189. The District Court determined that the maximum amount plaintiff could recover under COGSA is $137,331.67, and under CMR is $52,418.56.
 
 
 [5]
 Federal Rule of Appellate Procedure 4(a)(1)(A) states:
 In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.
 
 
 [6]
 The Notice of Appeal states:
 Notice is hereby given that Orient Overseas Container Line (UK), sued herein as Orient Overseas Container (UK) Ltd., OOCL (Europe) Ltd., Orient Overseas Container Line and OOCL (USA), Inc., the above-named Defendant, hereby appeals to the United States Court of Appeals for the Second Circuit from the Opinion and Order issued in this action on November 11, 1999 and the Judgment entered on November 30, 1990. (emphasis added)
 
 
 [7]
 Article 1 of CMR states:
 This Convention shall apply to every contract for the carriage of goods by road in vehicles for reward, when the place of taking over of the goods [here, Belgium] and the place designated for delivery [here, The Netherlands], as specified in the contract, are situated in two different countries, of which at least one is a Contracting country, irrespective of the place of residence and the nationality of the parties.
 CMR, art. 1, sec. 1, 399 U.N.T.S. 189. The parties agree that both Belgium and The Netherlands have ratified CMR.
 
 
 [8]
 Section 1307 states:
 Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.
 
 
 [9]
 Defendants argue in their reply brief, apparently for the first time, that the Canadian Carriage of Goods by Water Act, R.S.C. ch. C 27 ("COGWA"), and not COGSA, governs the ocean transport portion of the carriage. As defendants' counsel acknowledged at oral argument, however, an answer to the question of whether COGWA or COGSA applies to the carriage by ocean does not affect this appeal because either law would apply by contract (and not ex proprio vigore) and, in our view, must be interpreted in light of the clearly conflicting language of Clause 4.
 
 
 [10]
 If this dispute had involved the sea-going portion of the transport, COGSA would apply ex proprio vigore, and the applicable law would not be governed by the choice-of-law provisions in the bill of lading.
 
 
 [11]
 By laws "directed specifically" at a stage of transport, we mean laws drafted with the specific intent to govern a stage of transport, as opposed to general laws of liability that would govern in the absence of a contract or statute. An example of a law that would be directly applicable to a particular stage of transport is COGSA, which was drafted specifically to govern the liability of carriers during shipment of cargo by sea to and from ports of the United States. Another example is CMR, which was drafted specifically to govern the liability of carriers that ship cargo by road between two countries, one of which has ratified CMR.
 
 
 [12]
 Hartford contends that, even if CMR applies, the parties' prior dealings invalidate the exoneration provision in Clause 4 because defendants had previously accepted liability and paid for Trek cargo lost or damages during transport. Hartford therefore suggests that, regardless of whether CMR applies, the parties' prior conduct has modified the terms of the contract. This is a factual issue to be explored by the District Court on remand.
 Hartford also notes that Article 29(1) of CMR bars the carrier from limiting its liability if the loss is "caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court or tribunal seized of the case, is considered as equivalent to wilful misconduct." CMR, art. 29, sec. 1, 399 U.N.T.S. 189. Because it maintains that defendants' conduct rose to the level of "willful misconduct," Hartford argues that CMR's limitation-of-liability provision would not govern this case even if CMR applied. This claim also presents a question of fact that must be addressed on remand in the event that the District Court finds the exoneration provision invalid.