Kalman WEISS, as assignee, et al., Plaintiffs,

v.

LA SUISSE, Societe D'Assurances Sur La Vie, Defendants.

No. 97CIV.1352(CM)(MDF).

United States District Court, S.D. New York.

March 19, 2004.

Rachell Sirota, Sirota & Sirota LLP, New York, NY, Richard M. Mahon, Drake, Sommers, Loev, Tarhis & Catania, P.C., Newburg, NY, John J. Walsh, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, for Plaintiffs.

Richard Niles Chassin, Becker, Glynn, Melamed & Muffly LLP, New York, NY, for Defendants.

## MEMORANDUM ORDER DENYING MOTION FOR NEW TRIAL

McMAHON, District Judge.

Plaintiffs' Motion For A New Trial Pursuant To Rule 59 of the Federal Rules of Civil Procedure is denied, without the need for any response by defendant.[1]

This Court has issued numerous opinions in this action, and the reader is urged to consult them for a precis of the factual background.[2] The only additional fact relevant to this motion is that, after a nine day jury trial, a verdict was returned rejecting plaintiffs' claim of racial/ethnic discrimination pursuant to 42 U.S.C. § 1981, but granting relief to certain of the individual plaintiffs on a theory of breach of contract.

---

[1] Pursuant to this court's individual rules, motions for reargument, reconsideration and new trials are first considered by the Court and only if I so request are responsive papers necessary. *See* Individual Practices of Judge McMahon, 2(G) Motions for Reconsideration.

[2] *See Weiss, et al. v. La Suisse,* 293 F.Supp.2d 397 (S.D.N.Y.2003); *Weiss, et al. v. La Suisse,* 260 F.Supp.2d 644 (S.D.N.Y.2003); *Weiss, et al. v. La Suisse,* 161 F.Supp.2d 305 (S.D.N.Y.2001); *Weiss, et al. v. La Suisse,* 154 F.Supp.2d 734 (S.D.N.Y.2001); *Weiss, et al. v. La Suisse,* 131 F.Supp.2d 446 (S.D.N.Y.2001); *Weiss, et al. v. La Suisse,* 69 F.Supp.2d 449 (S.D.N.Y.1999).

Plaintiff assigns two grounds (discussed below) for overturning the jury's unanimous conclusion.

■ First, plaintiffs claim that the court erred in instructing the jury on the issue of pretext. In brief, plaintiffs asserted that the reason La Suisse took various administrative and financial actions in respect of plaintiffs' "marriage policies" (policies that paid benefits in the case of, *inter alia,* marriage of the named insured before the age of 26) was because the policy holders were Jewish. La Suisse argued that it took these actions to protect itself from financial disaster when company executives finally realized that La Suisse would lose its shirt as a result of having issued these policies. The financial disaster was occasioned by the fact that most Hassidic Orthodox Jews marry at an age far younger than 26, and plaintiffs argued that this articulated reason was simply a pretext for anti-Semitism. The jury disagreed.

Plaintiffs complain that my instruction to the jury on the issue of pretext caused the jurors to apply the wrong standard to La Suisse's pretext defense. The instruction I used was outlined in an earlier opinion, where the issue of what to say to the

jury on the subject of pretext was thoroughly aired. (Decision and Order on Motions to Limit Use of Evidence, January 20, 2004, p. 4). As I said in that opinion, in order to prevail on their claim under 42 U.S.C. § 1981, plaintiffs had to convince the jurors that La Suisse took actions with respect to the policies because plaintiffs were Jewish—not because they married at a young age (whether by arrangement or not.) [3] Many different ethnic and religious groups foster marriage prior to the age of 25—some as early as 12 or 13 for girls—so while early marriage is indeed a feature of Hassidic life, it is not a characteristic unique to the Hassidim. As a result, no rational juror could infer *solely on the basis of the prevalence of early marriage in the Hassidic community* that defendant was discriminating against plaintiffs because they were Jewish.

Plaintiffs clearly wanted the jury to do precisely that. Indeed, counsel insisted throughout the trial that early marriage and being "Orthodox Jewish" [4] were one and the same thing. Because plaintiffs insisted on arguing that equation, I instructed the jurors that reaction to the fact and the implications of early marriage, without more, could not be equated to anti-

---

**3.** One of the sillier tangential issues discussed at the trial was whether this practice constituted an "arranged marriage" or not. It depends, of course, on one's point of view. Clearly, Hassidic young people do not marry after a courtship similar to that practiced in most Western societies, where two people select each other as life partners, without any parental involvement, generally after a period of dating whomever they choose. According to the testimony, Hassidic parents select a potential partner who by their lights is appropriate and introduce that person to their children. The young people apparently have some say in the matter (at least a veto), so it is perhaps understandable that members of the Hassidic community might bridle at the suggestion that these marriages are "arranged." They are not "arranged" in the sense that marriages are arranged in many societies,

where, for example, young girls are simply given to men of their parents' choice. But most Westerners would view the Hassidic practices described at the trial as a form of "arranged" marriage. However, the point is of far greater cultural/linguistic than legal interest.

**4.** Although plaintiffs' counsel repeatedly insinuated that all Orthodox Jews marry at an early age, their principal witness, Elias Horowitz, recognized that there were Orthodox Jews who were not Hassidic and who did not marry at an early age. Undoubtedly there are also Orthodox Jews who are not Hassidic who do marry at an early age. The plaintiffs here were all members of a Hassidic community in which early marriage is the norm, which is why I use this term.

Semitism. Plaintiffs should feel free to take the matter up with the Court of Appeals, but there is nothing in their argument that was not raised before, and I am no more persuaded by them now than I was at or before the trial.

In relation to their various breach of contract claims, plaintiffs object to my failure to hold a testamentary hearing prior to making my rather extensive findings of foreign law (chronicled in *Kalman Weiss et al, v. La Suisse*, 293 F.Supp.2d 397 (S.D.N.Y.2003)), which were used to instruct the jury. This objection is not well-founded and does not justify a new trial.

■ It is the province of the court to decide what foreign law is (Fed.R.Civ.P. 44.1), and a district judge is given wide latitude in determining what evidence to take on the subject, and in what form. *Guidi v. Inter–Continental Hotels Corp.*, 95 Civ. 9006, 2003 WL 1907901 at * 2 (S.D.N.Y. Apr 16, 2003). Prior to reaching my decisions, I reviewed extensive submissions from experts for both sides concerning the application of Swiss law—including Article 120 of the Swiss Federal Private International Law Act ("the 1987 Act")—to the construction of the insurance agreements in the suit. Some of the reports I reviewed had actually been submitted years earlier, in connection with a forum non conveniens motion. Unless the law requires me to hear live testimony on these matters—and I do not believe it does—plaintiffs cannot complain that they have not had a Rule 44.1 hearing. They did have a hearing—just not one involving live witnesses.

■ After considering all the evidence, whenever submitted, I concluded that Art. 120 of the 1987 Act was part of the Swiss law of conflicts of laws, and for that reason it should NOT be considered by a New York court in determining whose

law—Switzerland's or New York's—governed construction of the contracts. A federal court sitting in New York ordinarily applies New York's choice of law rules in deciding what law governs the interpretation of a contract. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shugrue v. Insurance Co. of State of Pennsylvania*, 180 B.R. 53, 55 (S.D.N.Y.1995). Under New York law, the court ignores the conflicts laws of another jurisdiction, and imports only the substantive law, so as to avoid the dreaded renvoi. *Anderson v. SAM Airlines*, 939 F.Supp. 167, 175 (E.D.N.Y.1996); *Sears Roebuck & Co. v. Enco Assoc. Inc.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977).

There can be no question that Art. 120 of the 1987 Act is a choice of law provision. That is apparent from the fact of the statute:

**Contracts with Consumers**

1. Contracts for goods and services which are for the personal or family consumption or use of a consumer and which are not connected with the professional or business activity of the consumer are governed by the law of the country in which the consumer has his habitual residence:

   (a) if the supplier received the order in that country;

   (b) if an offer or an advertisement in that country preceded the making of the contract and the consumer, in that country, performed the legal actions required to make the contract, or

   (c) if the supplier prompted the consumer to go abroad and make his or her order there.

2. A choice of law is excluded.

(Legal Opinion of Professor Dr. Anton K. Schnyder and Dr. Paolo Michele Patocchi, dated May, 18, 2001, 25.). Swiss case law confirms this,[5] and defendant espoused

---

5. In *Eckstein v. La Suisse*, the Swiss Cantonal

Court reasoned that "Because the plaintiff is

this interpretation as well, stating that Art. 120 would not bind foreign courts. (Vischer Decl., dated Nov. 12, 1997, submitted in support of the on forum non conveniens motion, at 5) (See arguments made in Defendant's Memorandum of Law Concerning Application of Swiss Law, June 13, 2001, 6–10; Reply Mem. of Law In Further Support of Defendant's Motions to (A) Dismiss Pl. Contract Claims, June 13, 2003.).

■ This case illustrates exactly why New York courts ignore the choice of law provisions of another state's law. Application of Art. 120, a Swiss choice of law provision, would in fact create a renvoi. Article 120 tells a court construing a consumer contract to apply the law of the state where the holder of the consumer contracts resides—in this case, the law of New York. New York choice of law principles, however, tell us to apply Swiss law, because the policies provide that Swiss law—specifically Section 2.2 of the General Conditions governing insurance contracts—governs their construction. If New York imported Swiss conflicts law as well as Swiss substantive law, no law would govern, because Swiss conflicts law (embodied in Art. 120) points to New York, which points to Switzerland, which points to New York.......and so on. Therefore, New York courts ignore choice of law provisions from foreign states. We apply our own law in order to decide which body of substantive law governs. Under New York law, Swiss substantive law governs.

I ruled on this point several years ago—in *Weiss, et al. v. La Suisse,* 154 F.Supp.2d 734, 740–41 (S.D.N.Y.2001). I did not, as plaintiffs suggest, ignore the issue until the eve of trial, after years of "mishandl[ing] and neglect[ ]." [6] (Pl.Mem., 6). Plaintiffs raised the issue again two years after the initial ruling, when they responded to a motion in limine to exclude all evidence relating to plaintiffs' contract claims on the ground that those claims were barred by Swiss substantive law.[7] (See Pl. Mem. In Opp. to Def. Motions *In Limine* and In Support of Pl. Renewed Request for a Rule 44.1 Hearing, 6–9). This was in effect a belated motion to reargue a point long ago decided. In the interest of justice, I re-addressed the matter in my ruling on the so-called in limine motion. Plaintiffs lost again.

Plaintiffs' new trial argument is particularly unpersuasive because, as I noted in my most recent opinion on the subject, their own experts asserted that Article 120 of the 1987 Act was in fact a conflicts provision. Plaintiffs' expert report identified the question put to the experts as: "Is the choice-of-law clause contained in and evidenced by 2.2 of the <<General Conditions>> of La Suisse valid and binding on plaintiff policy-holders as a matter of Swiss law." (Mahon Decl., Ex. A, p. 9.) They began their answer to the question as follows:

"It is settled law that a contract entered into between an insurance company having its registered offices in Switzerland

---

domiciled in Monroe, in the State of New York, and the defendant is located in Switzerland, the first point to be considered is that of the applicable law." (Pl. Brief on Choice of Law and Foreign Law Issues, Ex. A, 16.) In determining which law applied the Court looked to Arts. 116 and 120 of the Federal Law Governing International Private Law.

6. How I handle my calendar is my business, but given the number of lengthy opinions that

have been written by this court in this case, I hardly think plaintiffs can complain of neglect.

7. This, of course, was not a proper in limine motion—it was a motion for summary judgment, made well after the deadline for so doing—but it was typical of the litigation tactics used by both sides throughout the course of this matter.

and a party domiciled or resident outside the jurisdiction such as a policyholder having his habitual residence and/or domicile in the state of New York, USA, is an international contract. The law governing such an international contract is therefore not necessarily Swiss law and must be determined in accordance with the rules of the Swiss conflict of laws. *The rules of Swiss conflict of laws on contracts are contained in the Swiss Federal Private International Law Act, 1987.*"

(*Id.*, 15.)(emphasis added.)

Nowhere in the report do plaintiffs' experts state that Art. 120 was a provision *of* substantive law. In fact, multiple statements in the report support my finding that it is a conflicts provision. Specifically, plaintiffs' experts describe the "principle of party autonomy" as the parties' right to determine what law applies, and note that it was "already *regarded as the main conflicts rule for international contracts before the 1987 Act* entered into force." (*Id.*, Ex. A, 16.)(emphasis added.) The report then describes certain circumstances in which the 1987 Act limited "party autonomy" for certain types of contracts. One of those types of contracts is consumer contracts. The experts explained that the issue of whether to override party autonomy in the case of consumer contracts was hotly debated, but it was eventually concluded in favor of eliminating party autonomy as a matter of consumer protection. (*Id.* 22.) However, as the experts observe, "This decision is all the more significant because the Swiss legislature, *in the process of formulating new conflicts rules for contracts,* systematically took into account the European Union's Convention of 19 June 1980..." which allows party autonomy in consumer contracts. (*Id.*)(emphasis added.) In other words, this decision was part of the reformulation of the Swiss law of conflicts of laws, which makes Art. 120 a choice of law provision.

In analyzing the application of Art. 120 to the contracts at issue in the case, plaintiffs' experts even note that "Commentators *on the conflicts of laws in Switzerland* agree that a consumer contract within the meaning of this provision [Art. 120] can relate not only to goods, but also to services." (*Id.*, 28.)(emphasis added.) In short, plaintiffs' expert report discusses Article 120 in the context of how Swiss law handles choice of law questions. The experts did not opine that Art. 120 was a provision of substantive law, and until making this post-trial motion, plaintiffs did not so argue. They contended only that Art. 120 was determinative of whose law governed construction of these contracts because the contracts were consumer contracts. (Pl. Mem. In Opp. to Def. Motions *In Limine* and In Support of Pl. Renewed Request for a Rule 44.1 Hearing dated June 6, 2003, 7-9). That seemed (and seems) to me a questionable proposition, but I did not decide the point, because once I determined that Art. 120 was a choice of law provisions, I did not need to do so.[8]

■ If I am correct that Article 120 is a choice of law provision, as plaintiffs' own experts imply,[9] then as a court sitting in

---

**8.** I note that the Swiss Cantonal Court in *Eckstein*—a case involving these very policies—concluded that the plaintiffs had failed to prove that the policies were consumer contracts.

**9.** Plaintiffs seem to feel that I misunderstood what their experts were saying, and that if only I had seen them testify, I would have realized that their opinions supported a conclusion that Article 120 was a substantive provision, not a conflicts provision. As set forth in this opinion, I believe I understood precisely what plaintiffs' experts were saying. I am not altogether sure that plaintiffs understand the point, which I why I have taken the time to set out my reasoning yet again.

New York I pay it no mind, because a New York court construing a contract governed by Swiss law imports only the substantive law of Switzerland, without regard to its law on conflicts of law. *Anderson,* 939 F.Supp. at 175. Plaintiffs can air their disagreement about my conclusion in the Second Circuit.

The jury's verdict on all counts was completely consistent with the evidence and its view of the credibility and persuasiveness of the witnesses. No new trial is warranted.