Hokyung "Harrison" KIM, Plaintiff,

v.

CO–OPERATIVE CENTRALE RAIF-FEISEN–BOERENLEENBANK B.A., et al., Defendants.

No. 03 CIV. 1547JES.

United States District Court,
S.D. New York.

April 5, 2005.

Rose & Rose, P.C., Attorneys for Plaintiff Hokyung "Harrison" Kim, Washington, D.C., Joshua N. Rose, Esq., Of Counsel.

Law Offices of Neal Brickman, Attorneys for Plaintiff Hokyung "Harrison" Kim, New York, Neal Brickman, Esq., Ethan Leonard, Esq.; Of Counsel.

Robson Ferber Frost Chan & Essner, LLP, Attorneys for Defendant Co-operative Centrale Raiffeisen–Boerenleenbank B.A., New York, Robert M. Kaplan, Esq., Of Counsel.

McMillan Constabile LLP, Attorneys for Defendant Michael Ice, Larchmont, William J. Foster, IV, Esq., Of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The present controversy involves the effect that a Singapore court's order dismissing a claim and granting costs has on a subsequent action brought in this Court between the same parties on the same causes of action. Because Singapore law would deem this action precluded, and because New York law would recognize and enforce the Singapore judgment for costs, this Court grants defendants' motions for summary judgment.

## BACKGROUND

Plaintiff, Hokyung "Harrison" Kim ("Kim" or "plaintiff"), brought this action by Complaint dated March 6, 2003 against defendants, Co–Operative Centrale Raiffeisen–Boerenleenbank B.A. ("Rabobank" or "defendant"), Michael Ice, and Michele Di Stefano[1] (collectively "defendants"), seeking to recover for breach of contract and for misrepresentations made when defendants recruited Kim to head Rabobank's "Structure Finance and Arbitrage Desk." *See* Compl. ¶¶ 87–127. After answering the Complaint, defendant submitted a Motion for Summary Judgment dated July 7, 2003, in which it maintained that this action was barred by an order dismissing an earlier Singapore action, and that defendant was entitled to summary judgment on its counterclaim which sought to enforce the Singapore judgment awarding it costs. *See* Def.'s Summ. J. Mem. at 1–2. Defendant Ice joined that Motion insofar as it sought to dismiss the Complaint on preclusive effect grounds. *See* Mem. of Michael Ice at 1–5.

The Singapore action at issue was commenced in 1999 by Kim, and it asserted causes of action against defendant that "were based on substantially the same set of operative facts as the present action." Stipulation of Undisputed Facts ("Stip.") ¶ 1. Between 1999 and 2001 the Singapore litigation was dismissed on the pleadings, reinstated upon appeal, *see id.* ¶ 2, subject to a variety of orders and appeals concerning the specificity of the pleadings, *see id.* ¶ 3, and subject to disagreements over doc-

---

1. Di Stefano has not answered the Complaint or appeared in this action.

ument demands and discovery, *see id.* ¶ 4. The expensive discovery process dragged on, *see* Def.'s Mem. With Respect to Res Judicata Issues ("Def.'s R.J. Mem.") at 5; Pl.'s Summ. J. Mem. at 12–13, and the case was never set for trial, *see* Stip. ¶ 6.[2]

On February 21, 2002, plaintiff served defendant with a Notice of Discontinuance which purported to "wholly discontinue" the Singapore action. *See id.* ¶ 7; *id.* Ex. B. Plaintiff indicated that he would not seek leave of court or consent from defendant to discontinue, *see id.* Ex. D ¶¶ 13–14, and he relied on Order 59, Rule 10 of the Singapore Rules of Court ("S.R.C.") as a basis for the discontinuance, *see* Pl.'s Opp'n Mem. to Res Judicata Defense ("Pl.'s R.J. Mem.") at 5.

Defendant responded by filing an application dated April 3, 2002, in which it asked the Singapore court for orders on several prayers for relief. Defendant asked for orders dismissing the action ("Prayer 1"), precluding "any claim in [the] future in the Republic of Singapore or any jurisdiction in respect of the subject matter of this action against the Defendants" ("Prayer 2"), and assessing costs against plaintiff ("Prayer 3").[3] Stip. ¶ 8; *id.* Ex. C.

A Hearing on defendant's application was held on April 17, 2002. *Id.* ¶ 11. At the Hearing, which is memorialized by only a skeletal transcript, *see id.* Ex. E, the primary issue discussed was "where the prejudice lies," *id.* Ex. E at 2. Plain-tiff's counsel argued that the "[o]nly prejudice is costs," *id.* Ex. E. at 2, and stated that Kim was "financially unable to go through trial at this point," *id.* Ex. E at 1, and that the "Court cannot compel the plaintiff[ ] to litigate against his wishes," *id.* Ex. E at 2. Plaintiff did not seek an order of discontinuance from the court, *see* Pl.'s R.J. Mem. at 6, and he maintained that under Singapore court rules the action would have been deemed discontinued by operation of law in just a few months because of inactivity by both parties, *see* Stip. Ex. E. at 2. Defendant responded by arguing that "[i]nability to continue an action is not a good reason," and pointed out that Kim had earlier sought to discontinue while "refus[ing] to take out [an] application to discontinue." *Id.* Ex. E. at 2. Defendant maintained that this amounted to abuse of process and want of prosecution. *See id.* Ex. E at 2.

Following arguments, the Singapore court granted Prayers 1 and 3. *See id.* Ex. E at 2. Prayer 2, seeking an order of preclusion, was not addressed.[4] *See id.* Ex. E at 2. A written Order was entered on May 6, 2002 and an amended Order was entered on September 4, 2002 ("Singapore order"). *See* Stip. ¶ 13. On January 28, 2003 the Singapore court taxed costs against plaintiff in the amount of S$324,-612.06 (Singapore dollars) ("Singapore judgment"). *See* Stip. ¶ 14; *id.* Ex. H; Decl. of Ashok Kumar, dated July 7, 2003, ("Kumar Decl.") ¶¶ 31–33. Of this amount, S$60,000 was collected by defendant from

---

**2.** At the Singapore Hearing conducted on April 17, 2002, plaintiff's counsel did indicate that the "[c]laim nearly went to trial in year 2000." Stip. Ex. E at 2; Pl.'s Opp'n Mem. to Res Judicata Defense at 8.

**3.** The application also sought other orders relating to a third party.

**4.** Defendant argues that the Singapore court discussed Prayer 2 orally and that it indicated that it felt no need to grant it since it was granting Prayer 1, which dismissed the action. *See* Def.'s R.J. Mem. at 7; Def.'s Exs. With Respect to Res Judicata Issues Ex. A, Dep. of Ashok Kumar at 17. Plaintiff contends that this statement was never made. *See* Pl.'s R.J. Mem. at 9–10. On this motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

the security posted by plaintiff. Kumar Decl. ¶ 32.

As stated above, plaintiff initiated the present action in this Court on March 6, 2003. Following a November 14, 2003 Oral Argument on defendants' motions ·for summary judgment, this Court ordered the submission of expert· affidavits and legal memoranda on the issue of Singapore law. A Hearing to that effect was held on November 8, 2004.

## DISCUSSION

A court may only grant summary judgment when "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All ambiguities and factual inferences must be drawn in favor of the party opposing the motion. *See Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999).

■ Summary judgment is not inappropriate when factual disputes are irrelevant to the outcome of the case, *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996), or when the parties present conflicting evidence about the "content, applicability, or interpretation of foreign law," *Rutgerswerke AG v. Abex Corp.*, No. 93 Civ. 2914, 2002 WL 1203836, at *16, 2002 U.S. Dist. LEXIS 9965, at *52 (S.D.N.Y. June 3, 2002); *see Bassis v. Universal Line, S.A.*, 436 F.2d 64, 68 (2d Cir.1970). Pursuant to

Federal Rule of Civil·Procedure 44.1, it is the Court's function to determine foreign law, and the Court is given wide latitude in making that determination. *See Rutgerswerke AG*, 2002 WL 1203836, at *15, 2002 U.S. Dist. LEXIS 9965, at *51.

■ In this diversity action this Court must apply New York choice of law rules. *See Gilbert· v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir.2003). In determining the preclusive effect of the Singapore dismissal, a New York court would look to the law of Singapore and would give that order the same preclusive effect that it would enjoy in Singapore. *See Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 275, 265 N.E.2d 739, 742, 317 N.Y.S.2d 315, 318 (1970); *Voreep v. Tarom Romanian Air Transp.*, No. 96 Civ. 1384, 1999 WL 311811, at *3–4 (S.D.N.Y. May 18, 1999).

.Singapore law[5] would preclude an action where there was an earlier action· on the same subject matter, between the same parties, which resulted in a final adjudication or an order that was intended to have preclusive effect. *See Lee Hiok Tng v. Lee Hiok Tng*, [2001] 3 S.L.R. 41, 49–50 (Ct. of App.); *Hendrawan Setiadi v. OCBC Sec. Pte Ltd.*, [2001] 4 S.L.R. 503, 508 (High Ct.).

Here, it is undisputed that the present action is based on the same subject matter as the Singapore action,[6] *see* Stip. ¶ 1, and that the parties are the same.[7] The only

---

**5.** In determining Singapore law, this Court was informed, and its reading of case law made it readily apparent as well, that courts in Singapore frequently cite to English and Malaysian case law as precedent. *See* Walter Woon, "The Applicability of English Law in Singapore," *in The ·Singapore Legal System* ch. 6 (Kevin Yl Tan ed., 2d·ed.), *reprinted in* Decl. of Julia Yeo, dated Aug. 6, 2003, Ex. S. Therefore, this Court will do the same.

**6.** Although this matter is now undisputed, in opposing defendants' Motion for Summary Judgment plaintiff's Singapore lawyer maintained that there could be no preclusion here

because the present action asserts "fundamentally different causes of action." Decl. of Julia Yeo, dated Aug. 6, 2003, ¶ 49. This internal incoherence and inconsistency marks many of plaintiff's arguments.

**7.** Insofar as defendant Ice was acting as an agent of Rabobank, Singapore law would deem him in privity with Rabobank and thus incapable of being sued 'on that cause of action. *See Tohru Motobayashi v. Official Receiver*, [2000] 4 S.L.R. 529, 540 (Ct. of App.); *Wong Peng Yan Benjamin v. Genting Bhd*, [1993] 3 M.L.J. 713, 721–22 (High Ct. (Kuala Lumpur)). To the extent that any of plaintiff's

disputed issue is the preclusive effect that a Singapore court would afford the Singapore order.

██ Defendant points to well-established Singapore law that orders of dismissal following the commencement of trial are preclusive. *See* Expert Decl. of Govinda Pannirselvam, dated May 11, 2004, ("Pannirselvam Decl.") ¶¶ 16–26; *see also Setiadi*, 4 S.L.R. 503. Defendant contends that this line of authority applies equally to situations where litigation has progressed to an advanced stage and plaintiff has expressed an unwillingness to proceed. *See* Def.'s R.J. Mem. at 10; *see also* Jeffrey Pinsler, *Singapore Court Practice*, ("Pinsler Treatise") at 632, *reprinted in* Def.'s Exs. With Respect to Res Judicata Issues Ex. E.

Plaintiff argues that the Singapore order should not be given preclusive effect because the court did not grant Prayer 2, *see* Pl.'s R.J. Mem. at 1–2, 9, and because the action had been successfully discontinued by plaintiff, *see id.* at 1, 5, 23. In addition, plaintiff contends that the Singapore action was not at an advanced stage, *see id.* at 19, and that, regardless, the Singapore court would have no power to dismiss the action with prejudice solely on the basis of excessive delays, *see Jeyaretnam Joshua Benjamin v. Lee Kuan Yew*, [2001] 4 S.L.R. 1 (Ct. of App.); *see also Birkett v. James*, [1978] A.C. 297 (H.L.).[8]

Plaintiff's argument has a variety of defects. First, despite plaintiff's repeated representations that he discontinued the Singapore action by way of his February 21, 2002 Notice of Discontinuance, *see* Pl.'s R.J. Mem. at 1, 5, 23, his own expert as well as a cursory examination of Singapore law reveal that this was not the case, *see* Decl. of Jeffrey Pinsler, dated May 11, 2004, ("Pinsler Decl.") ¶ 9 n. 1; S.R.C. Order 21, Rules 2–3. The statutory authority that plaintiff purportedly relied upon is clearly irrelevant to this issue. *See* S.R.C. Order 59, Rule 10. Rather, in clear contravention of Singapore law requiring a plaintiff to obtain leave of Court to discontinue an action, S.R.C. Order 21, Rule 3, plaintiff refused to get such leave, Stip. Ex. D ¶¶ 13–14, and thus his notice was "of no effect," *see* Pinsler Treatise at 621.

Second, plaintiff improperly conflates dismissals and discontinuances. Plaintiff argues that he never thought that Prayer 1 standing alone could have preclusive effect, *see* Pl.'s R.J. Mem. at 6–7, and he contends that the Singapore court's failure to address Prayer 2 amounted to a denial of that request thus foreclosing any argument that the Singapore order would have preclusive effect; *see id.* at 1–2, 9. However, that argument is refuted by the opinions of both experts as well as by case law. *See* Pinsler Decl. ¶ 9 & n. 1; Pannirselvam Decl. ¶¶ 28–29 (expressing opinion that having decided to grant Prayer 1, Singapore court was without the power to grant Prayer 2); *Hanhyo Sdn Bhd v. Marplan Sdn Bhd*, [1992] 1 M.L.J. 51, 63 (High Ct. (Kuala Lumpur)) (citing case acknowledging that discontinuances and dismissals have different preclusive ef-

---

claims allege conduct by defendant Ice that is outside the scope of his employment, those actions will survive this motion.

8. Plaintiff and his expert also argue that Singapore law would require some of these matters to be resolved by the *lex fori*, and thus this Court should apply New York law. *See* Decl. of Jeffrey Pinsler, dated May 11, 2004, ¶¶ 6, 25; Pl.'s R.J. Mem. at 11, 24. New York

choice of law rules, however, require this Court to ignore Singapore conflicts laws while importing only its local law. *See, e.g., Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 313 F.Supp.2d 241, 244–45 (S.D.N.Y. 2004). To do otherwise would result in "the dreaded renvoi"—an endless circle of good manners that would leave this Court paralyzed. *See id.*

fects). Therefore, although the court's failure explicitly to order preclusion would be fatal to defendant's case if this were a discontinuance, *see* S.R.C. Order 21, Rules 3–4, it is not the case on this order of dismissal.

Third, although it is true that the Singapore action did not go to trial, it is clear that the action had progressed through numerous appeals, refinements, and discovery proceedings. *See* Stip. ¶¶ 1–4. Although plaintiff now contends that the matter "was far from ready for trial," Pl.'s R.J. Mem. at 19, his Singapore counsel indicated that the "[c]laim nearly went to trial in year 2000," Stip. Ex. E at 2, and the Singapore court taxed costs against him in the amount of S$324,612.06, *see* Stip. Ex. H.

Finally, plaintiff ignores the fact that he has engaged in a series of actions that a Singapore court would find abusive. As stated above, in clear contravention of the S.R.C., plaintiff attempted to discontinue the Singapore action without leave of court. Leaving aside plaintiff's repeated representations that this discontinuance was somehow successful, plaintiff's Singapore counsel admitted that the Singapore court found this attempted discontinuance to be "an abuse of process," Decl. of Julia Yeo, dated Aug. 6, 2003, ¶ 44, and courts considering similar situations have found that preclusion of future actions was appropriate, *see, e.g., Hanhyo Sdn Bhd,* [1992] 1 M.L.J. at 66.

In addition to flouting the rules, plaintiff inexcusably delayed the prosecution of his Singapore action because he was "financially unable to go through trial," Stip. Ex. E at 1, and desired to "transfer the dispute resolution process to New York,"

Decl. of Hokyung Kim, dated Aug. 6, 2003, ¶ 337. As even plaintiff's expert indicates, such refusal to go to trial constitutes a "procedural default," Pinsler Decl. ¶ 24, and courts considering such recalcitrance coupled with other abuses of process have determined that preclusion of future actions is appropriate, *see, e.g., Grovit v. Doctor,* [1997] 2 All E.R. 417 (H.L.); *Arbuthnot Latham Bank Ltd. v. Trafalgar Holdings Ltd.,* [1998] 2 All E.R. 181 (C.A.); *OCD (M) Sdn Bhd v. Wah Nam Plastic Indus. Pte Ltd.,* [1999] 2 S.L.R. 381 (High Ct.).

Because the Singapore action was dismissed after having progressed to an advanced stage of litigation, and following plaintiff's violation of Singapore rules and his expressed unwillingness to prosecute his action, this Court finds that Singapore law would preclude the present action.[9]

■ Having found the present action precluded, the Court now turns to the effect of the Singapore judgment which awarded defendant costs. This Court must apply New York law to determine if the Singapore judgment should be recognized. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,* 989 F.2d 572, 582 (2d Cir.1993).

■ "New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts." *CIBC Mellon Trust Co. v. Mora Hotel Corp.,* 100 N.Y.2d 215, 221, 792 N.E.2d 155, 159, 762 N.Y.S.2d 5, 9 (2003). Article 53 of the Civil Practice Law and Rules codifies New York's approach. Subject to a number of exceptions, New York will recognize and enforce

---

**9.** This result also comports with public policy. To allow Kim to institute a fresh action in New York after having engaged in lengthy and expensive proceedings in Singapore smacks of forum shopping and unfair prejudice to defendant. Plaintiff should not be able to "transfer" his action here simply so he can continue vexing defendant without the need to post security. *See* Pl.'s R.J. Mem. at 24 n. 5.

foreign money judgments that are "final, conclusive and enforceable where rendered." N.Y. C.P.L.R. 5302–5303. A judgment can not be recognized if the rendering jurisdiction does not provide "procedures compatible with the requirements of due process of law," or if "[t]he foreign court did not have personal jurisdiction over the defendant." N.Y. C.P.L.R. 5304(a). The burden of proof on these issues is with the party seeking to enforce the judgment. *See Dresdner Bank AG v. Haque*, 161 F.Supp.2d 259, 263 (S.D.N.Y.2001). Recognition may be denied if the opposing party can prove any number of other defenses, including that the foreign judgment "is repugnant to the public policy of this state," N.Y. C.P.L.R. 5304(b); *see Dresdner Bank AG*, 161 F.Supp.2d at 263.

Here, defendant has easily carried its burden. The Singapore judgment is enforceable in Singapore, *see* Kumar Decl. ¶ 33, and it is clear that there was personal jurisdiction over all parties in the Singapore action, *see id.* ¶ 37, and that the Singapore legal system affords due process, *see id.* ¶¶ 40–46. Plaintiff presents no evidence otherwise, and, while he did assert a number of defenses in his answer to this counterclaim, *see* Answer to Countercls., he has not raised those defenses in opposition to this motion and he has presented no evidence in support of them.[10] *See* Fed.R.Civ.P. 56(e); *Dresdner Bank AG*, 161 F.Supp.2d at 264.

Therefore, defendant is entitled to summary judgment on its counterclaim seeking the enforcement of the Singapore judgment. Because a portion of this judgment seems to have been collected, and because the parties have failed to brief this Court on the issue of interest, this Court will reserve decision on damages at this time.

10. Plaintiff's sole argument in opposition to this motion is that enforcement should be stayed pending resolution of plaintiff's under-

## CONCLUSION

Based on the foregoing, Rabobank's Motion for Summary Judgment on plaintiff's causes of action shall be and hereby is granted. Defendant Ice's Motion is granted insofar as the causes of action asserted against him allege conduct committed in the scope of his employment with Rabobank. In addition, Rabobank's Motion for Summary Judgment on its counterclaim seeking to enforce the Singapore judgment shall be and hereby is granted. A Pre-Trial Conference to discuss the issue of interest and the status of this action as against Ice and Di Stefano shall occur on May 19, 2005 at 3:00 p.m. in Courtroom 705, 40 Centre Street.

It is SO ORDERED.

lying claims. *See* Pl.'s Summ. J. Mem. at 25. Those claims have now been deemed barred.